COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


LASHANT LEONARDO WHITE

                                                           OPINION BY
v.        Record No. 0767-15-1                   JUDGE MARLA GRAFF DECKER
                                                           MAY 10, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge[1]

Daymen Robinson for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Lashant L. White appeals his convictions for possession of heroin with intent to distribute,

third or subsequent offense, in violation of Code § 18.2-248 and possession of marijuana in

violation of Code § 18.2-250.1.  On appeal, he contends that the searches of his person and bag

were unreasonable under the Fourth Amendment of the United States Constitution.  As a result, he

argues that the trial court erred in denying his motion to suppress the evidence found during those

searches.  We hold that the evidence, viewed under the proper standard, supports the determination

that the initial encounter and search of the appellant's person were reasonable.  We further

conclude, however, that the search of the bag was unreasonable and the admission of evidence

found in the bag was not harmless.  Accordingly, we affirm in part, reverse in part, and remand for

further proceedings consistent with this opinion if the Commonwealth be so advised.

---

[1] Judge Hall presided over the trial and sentencing.  Judge Jerrauld Jones ruled on the
pre-trial suppression motion.

# I. BACKGROUND[2]

At about 11:00 p.m. on October 18, 2013, Investigator Leldon Sapp of the Norfolk Police Department received an anonymous telephone complaint of possible drug activity at a particular motel in the city. Sapp and Investigator Glenn Gardiola, along with a third officer, Investigator McCarthy, drove to the motel, arriving sometime before midnight. All three officers were in plain clothes and wore vests marked "Police." Sapp and Gardiola were eighteen-year veterans of the department. Both worked for the vice and narcotics division. Sapp had been employed in that capacity for four years, and Gardiola for nine years. Neither investigator found the report of drug activity at the motel surprising, as it was "a known drug motel and vice motel." Both officers had made prior drug arrests at the motel, and Gardiola knew that subjects in previous narcotics operations had named the motel as "their area of choice . . . [for] meeting and making these transactions."

The investigators arrived at the motel and saw the appellant standing outside. As they watched, a sedan pulled into the motel's parking lot and stopped beside him. The appellant spoke to the vehicle's driver and put his head and arms through the window. The investigators pulled their unmarked car up to the rear of the sedan and got out. As the appellant turned from the sedan toward the officers, he was holding money in one hand and a cell phone in the other hand. The officers did not see an exchange, but the encounter "looked to [Sapp] as if it was a drug transaction."

Investigator McCarthy approached the sedan and spoke to the driver through the passenger's side window. At the same time, Gardiola and Sapp interacted with the appellant on the driver's side

_____

[2] "When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012); see, e.g., Lawrence v. Commonwealth, 17 Va. App. 140, 143, 435 S.E.2d 591, 593 (1993) (stating that an appellate court reviewing a ruling denying a motion to suppress considers the evidence presented both at the suppression hearing and at trial), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994) (per curiam).

of the sedan. While the appellant stood beside the driver's window, Gardiola positioned himself at the car's left rear. The appellant then walked closer to Gardiola and stood about an arm's length away "while [they] started [a] conversation." Gardiola asked the appellant "for permission to speak to him," and the appellant "granted [Gardiola] permission." Sapp approached and stood next to Gardiola, although only Gardiola interacted with the appellant at that time. Gardiola told the appellant that they were "investigating suspected drug activity" at the motel and asked him for identification. Upon receiving the appellant's Virginia ID card, Gardiola wrote down the identifying information and returned the ID to the appellant. Gardiola "ran [the information] through dispatch" and learned that the appellant, who was forty-one years old, "was in the system but did not have any outstanding warrants."

Investigator Sapp then asked the appellant for consent to search his person, and the appellant agreed. Neither Gardiola nor Sapp drew his weapon, raised his voice, or threatened the appellant in any way. Instead, each used a "[v]ery conversational" and "calm tone of voice." Having received the appellant's consent to search, Investigator Sapp started to pat him down. When Sapp reached the appellant's left ankle, he felt what he described as "kind of a powdery substance." Based on "[his] training and experience," Sapp believed it "was either cocaine or heroin." He indicated that it was "not unusual" to find contraband in people's socks and that he had found drugs secreted there during searches of at least ten previous suspects. Although he had also found items in people's socks that were not drugs, those items felt hard rather than "soft[]" and "powdery." As Sapp attempted to remove the powdery item from the appellant's sock, the appellant used his hand to interfere with those efforts, "fighting" to keep Sapp from retrieving the item and "attempt[ing] to flee the scene." The investigator testified, based on these facts, that he believed the appellant's sock contained drugs.

Gardiola and Sapp subdued the appellant and handcuffed him. Sapp retrieved the item, which was a baggie containing four smaller baggies of suspected heroin and marijuana. Additional items recovered in a search of the appellant's person were $644 in cash and a second cell phone. After the search, the appellant was detained outside the motel.

Once in custody, the appellant asked the officers to go to a particular room in the motel and tell "his girlfriend Tanya." Sapp went to the room and told Tanya what had happened. He then asked her for permission to search the motel room. She agreed and permitted him to search. Sapp did not check to see who had rented the room. He merely "assumed" that Tanya was "the lessee" because she "seemed to have control" of it. Sapp saw a bag on a bed in the room. Before he opened the bag, Tanya told him that the bag belonged to the appellant. Inside the bag, which Sapp described as a "gray plastic bag," he found a "digital scale," a box of plastic sandwich bags, and a Ziploc bag containing about 200 empty capsules.

The appellant moved to suppress the evidence found on his person and in the bag in the motel room. After hearing evidence and argument, the trial court took the matter under advisement and later denied the motion.

At the appellant's subsequent bench trial, Investigator Sapp testified as an expert. He said that, considering only the items recovered from the appellant's person, revealed by testing to include four grams of heroin packaged in three bags of different weights, the evidence was inconsistent with possession for personal use. Sapp also observed that the appellant had different denominations of money in different pants pockets and that this, along with his possession of two cell phones rather than one, was indicative of distribution of drugs.

Sapp testified separately about the bag recovered from the motel room, stating that the items inside were paraphernalia used for distribution. He said that the digital scale found in the bag would be used to weigh the drugs and that the sandwich bags and capsules would be used to "break down

stuff . . . and double [one's] money." Finally, Sapp explained that users of drugs typically have "some[thing] . . . on them . . . to use [the drugs] with" and that a "big time user is going to use it through syringes." No such items were found on the appellant or in the bag.

The trial court found the evidence sufficient to convict the appellant of possession of heroin with intent to distribute, third or subsequent offense. The court stated that it had considered "the combination . . . of all the various factors" in concluding "that the drugs that were recovered and the various other indicia of distribution . . . indicated that the amount of heroin [the appellant] had on his person that day" proved an intent to distribute. The court also convicted him of possession of marijuana. It subsequently sentenced the appellant to twenty years, with ten years suspended, for the heroin conviction and thirty days, with thirty days suspended, for the marijuana conviction.

## II. ANALYSIS

The appellant challenges the trial court's denial of his motion to suppress evidence obtained in the searches of his person and bag. The Fourth Amendment protects people from unreasonable searches and seizures. E.g., Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010). Whether a warrantless search or seizure violated the Fourth Amendment presents a mixed question of law and fact. Id. The appellate court views the evidence in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible from it. Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). We are "bound by the trial court's findings of historical fact unless 'plainly wrong'" and "give due weight to the inferences drawn from those facts" by the trial judge and law enforcement. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). Ultimately, however, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008).

Warrantless searches and seizures are "presumptively unreasonable" under the Fourth Amendment. See Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991). Nevertheless, "courts recognize exceptions to this general rule in several circumstances, including when a party voluntarily consents to the search." Glenn, 275 Va. at 130, 654 S.E.2d at 913.

*A. Seizure of the Appellant and Search of his Person*

The appellant's challenge to the search of his person is based on his claims that the police lacked a legal basis for seizing and searching him and that even if he initially consented to the search, he withdrew that consent by physically resisting Investigator Sapp. Accordingly, he contends that the seizure of the drugs from his sock violated the Fourth Amendment.

Police are free under the Fourth Amendment to engage in consensual encounters with citizens. See, e.g., Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012). Officers need not have "any level of suspicion to justify non-coercive questioning . . . , including a request for identification." Id. Even if an officer has reasonable suspicion to detain a suspect to investigate a possible crime, the officer may nevertheless pursue an encounter based on consent. United States v. Drayton, 536 U.S. 194, 207-08 (2002). A seizure has not occurred if "a reasonable person would feel free to leave" the encounter. Sheler v. Commonwealth, 38 Va. App. 465, 474, 566 S.E.2d 203, 207 (2002). A consensual contact "becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) (alteration in original) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). The test is an objective one to be determined from the perspective of an innocent person based on the totality of the circumstances. Sheler, 38 Va. App. at 472, 474, 566 S.E.2d at 206-07 (quoting Bostick, 501 U.S. at 429).

Searches based on consent are also "'part of the standard investigatory techniques of law enforcement agencies' and are 'a constitutionally permissible and wholly legitimate aspect of

effective police activity.'" Fernandez v. California, 134 S. Ct. 1126, 1132 (2014) (quoting

Schneckloth v. Bustamonte, 412 U.S. 218, 228, 231-32 (1973)).  A consent to search is invalid

"only if it is involuntary or the product of manipulative 'exploitation' by the police of an earlier

unconstitutional search or seizure."  Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d

213, 218 (2005) (*en banc*) (citation omitted) (quoting Wong Sun v. United States, 371 U.S. 471, 488

(1963)).  The question of the voluntariness of consent to a search is whether it was "the product of

an essentially free and unconstrained choice by its maker."  Lowe v. Commonwealth, 218 Va. 670,

678, 239 S.E.2d 112, 117 (1977) (quoting Schneckloth, 412 U.S. at 225).  "Consent can be

invalidated only upon a showing that one's 'will [was] overborne and his capacity for

self-determination critically impaired.'"  Elliott v. Commonwealth, 61 Va. App. 48, 57, 733 S.E.2d

146, 151 (2012) (quoting United States v. Watson, 423 U.S. 411, 424 (1976)).  The Commonwealth

must prove voluntariness by a preponderance of the evidence based on "the totality of all the

circumstances."  Gray v. Commonwealth, 233 Va. 313, 327, 356 S.E.2d 157, 164 (1987) (quoting

Schneckloth, 412 U.S. at 227); see Sellers v. Commonwealth, 41 Va. App. 268, 272, 584 S.E.2d

452, 455 (2003) (recognizing that the ultimate question of the voluntariness of consent is one of

law).

The factors relevant to applying the totality-of-the-circumstances test for assessing whether

a seizure occurred overlap significantly with those to be considered in determining whether a

consent to search was voluntary.  See Drayton, 536 U.S. at 206.  Factors relevant to both

assessments include the number of officers present and whether any of the officers displayed a

weapon, engaged in "physical contact" with the person, used specific "language or tone of voice

compelling compliance," or retained the person's identification or other documents or property.

Jones, 279 Va. at 528-29, 690 S.E.2d at 99; see Malbrough, 275 Va. at 169-70, 655 S.E.2d at 4; see

also Hill v. Commonwealth, 52 Va. App. 313, 319, 663 S.E.2d 133, 136 (2008) (observing that

determining whether consent was voluntary also takes into consideration the characteristics of the individual because "the degree of pressure necessary to crush one's will varies with the individual" (quoting Ferguson v. Boyd, 566 F.2d 873, 877 (4th Cir. 1977))).  Another relevant factor is whether the person was told that he was free to leave or to refuse consent to search.  See, e.g., Drayton, 536 U.S. at 207.  Finally, "[v]oluntariness is not equated with the absolute absence of intimidation." Hill, 52 Va. App. at 319, 663 S.E.2d at 136 (quoting United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987)).  "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."  INS v. Delgado, 466 U.S. 210, 216 (1984).

Here, the evidence, viewed under the proper standard, supports the conclusion that the appellant was not seized when he consented to the search of his person and that his consent was voluntary.  The investigators approached the appellant in an unmarked police car, and no evidence indicates that they activated the car's emergency lights.  Investigator Gardiola got out of the car and from a distance of several feet, using a "conversational" and "calm tone of voice," he asked the appellant "for permission to speak to him."  The appellant agreed to speak to the officers.  He walked over to where Gardiola was standing.  Gardiola and the appellant then interacted further while about an arm's length apart.  Although Sapp joined Gardiola and stood beside him, only one of the officers spoke with the appellant at a time.  Additionally, although Investigator McCarthy was also present in the motel parking lot, he stood on the opposite side of the car from the appellant and interacted only with the driver.  Neither Gardiola nor Sapp drew his weapon, raised his voice, or threatened the appellant in any way.

In the course of Gardiola's discussion with the appellant, Gardiola told him merely that the officers were "investigating suspected drug activity" at the motel.  He did not tell the appellant that he matched the description of a suspected drug dealer or particularize the investigation in a way that

specifically targeted the appellant. See McGee, 25 Va. App. at 200-01, 487 S.E.2d at 262-63. Additionally, Gardiola asked the appellant for identification rather than demanding it. Once the appellant gave the officer his ID, Investigator Gardiola wrote down the necessary identifying information and returned it to the appellant promptly rather than retaining it.

Finally, once the officers learned from dispatch that there were no outstanding warrants for the appellant, Investigator Sapp began to interact with him. Sapp asked him in the same "calm" and "conversational" tone if he would permit Sapp to search him. The appellant gave verbal consent for the search. No evidence in the record indicates that the appellant, a man in his forties who had prior contact with the legal system, displayed any characteristics tending to indicate that he was impermissibly swayed by police influence. See Hill, 52 Va. App. at 319, 663 S.E.2d at 136.

The totality of the circumstances, viewed under the proper standard, supports a finding that the officers did not restrain the appellant in any way and that a reasonable innocent person in the appellant's position would have felt free to refuse to speak to the police officers as well as to decline the request to search his person. Accordingly, the evidence proves that both the encounter and the search were *consensual*.[3]

The appellant contends that even if the evidence supports a finding that he consented to the search, he withdrew that consent. He suggests that he did so by physically resisting when Investigator Sapp began to pat down his leg and attempted to retrieve the item from his sock.

Under settled principles, "[a] consensual search is reasonable if the search is within the scope of the consent given." Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992). Once valid consent is received, law enforcement may search until the individual engages in an "unequivocal act or statement of withdrawal." See Lawrence v. Commonwealth, 17

---

[3] Even if the appellant was being detained, this fact, standing alone, would not negate the voluntariness of his consent to a search of his person. See, e.g., Jones v. Commonwealth, 279 Va. 665, 674, 691 S.E.2d 801, 806 (2010); Gray, 233 Va. at 327, 356 S.E.2d at 164-65.

Va. App. 140, 146, 435 S.E.2d 591, 594-95 (1993) (quoting United States v. Alfaro, 935 F.2d 64, 67 (5th Cir. 1991)), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994) (*per curiam*). Finally, unless the search is justified on some other basis, "any evidence gathered beyond th[e] boundaries [of the consent] must be excluded." Bolda v. Commonwealth, 15 Va. App. 315, 319, 423 S.E.2d 204, 207 (1992) (quoting United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992)).

Assuming that the appellant's physical resistance to the search, standing alone, constituted an unequivocal withdrawal of his consent, we hold that the withdrawal came too late because an officer may search a suspect and seize evidence from his person even without consent if the officer has probable cause to believe that the suspect possesses contraband. See, e.g., Camden v. Commonwealth, 17 Va. App. 725, 727-28, 441 S.E.2d 38, 39-40 (1994). "Probable cause is a flexible, common-sense standard [which] merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain items may be . . . useful as evidence of a crime." Id. at 728, 441 S.E.2d at 40 (alterations in original) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). In assessing whether the facts establish probable cause, courts look to "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Parker v. Commonwealth, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998) (quoting Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981)). Although probable cause means more than a "mere suspicion," it does not "demand any showing that such a belief be correct or more likely true than false." Joyce v. Commonwealth, 56 Va. App. 646, 659, 696 S.E.2d 237, 243 (2010) (quoting Slayton v. Commonwealth, 41 Va. App. 101, 106-07, 582 S.E.2d 448, 450-51 (2003)).

Here, Investigator Sapp, an experienced narcotics officer who had found drugs in other suspects' clothing and socks on numerous prior occasions, testified that while he was conducting the consent search, he felt a soft, powdery substance in the appellant's sock and that he believed it was

cocaine or heroin. Additionally, just as Sapp determined the probable nature of the item, the appellant, who had been calm and cooperative until that point in the encounter, tried to deflect the investigator's hand and struggled to escape. See, e.g., McCain v. Commonwealth, 261 Va. 483, 491-92, 545 S.E.2d 541, 546 (2001) (considering attempted flight as a factor in assessing probable cause).[4] This behavior provided Sapp with additional evidence that the substance he felt in the appellant's sock likely was contraband.

These circumstances are distinguishable from those in Cost v. Commonwealth, 275 Va. 246, 657 S.E.2d 505 (2008). In Cost, police approached the defendant as he sat in a car in a parking lot designated for residents of the adjacent housing complex. Id. at 249, 657 S.E.2d at 506. During the encounter, the defendant reached twice for his pocket and did not respond to an inquiry regarding what he was reaching for. Id. While conducting a consensual pat down, the officer felt items that he knew were "numerous capsules" in the defendant's pocket, and he immediately seized them. Id. He explained that he believed, based on his training and experience, that the capsules were heroin, but he admitted that they could have been medication legitimately in the defendant's possession. Id. at 250, 657 S.E.2d at 506. No other articulable facts supported the officer's belief that the capsules were contraband rather than legal medication. Id. at 253, 657 S.E.2d at 508-09. The Supreme Court noted that the defendant's "failure to respond to the officer's questions [was] of no particular

---

[4] Even if we construe the appellant's physical resistance as indicating a desire to withdraw his consent to search, it simultaneously conveyed more than a mere withdrawal of consent would have, and the investigators were entitled to consider that additional information in the probable cause analysis. Compare Royal v. Commonwealth, 37 Va. App. 360, 372, 558 S.E.2d 549, 555 (2002) (observing that the mere "withdrawal of consent may no more be used to create reasonable suspicion of criminal wrongdoing than an initial refusal to consent to a search [may]" (quoting State v. Hayes, 51 S.W.3d 190, 194 (Mo. Ct. App. 2001))), with Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (stating that although a "'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure[,]' . . . unprovoked flight is simply not a mere refusal to cooperate [or] . . . 'going about one's business'" (quoting Bostick, 501 U.S. at 437)), and United States v. Hyppolite, 65 F.3d 1151, 1158 (4th Cir. 1995) (noting that "there may be some cases where the *form* of a suspect's assertion of rights" contributes to a finding of probable cause (emphasis added)).

significance because [he] was under no obligation to respond." Id. at 253, 657 S.E.2d at 509. It concluded that the evidence as a whole "supported a well-educated 'hunch[]'" that the capsules were contraband but did not provide probable cause for a warrantless seizure. Id. at 254, 657 S.E.2d at 509. Accordingly, the Court reversed the defendant's conviction. Id.

In the appellant's case, by contrast, the encounter began when the officers observed the appellant engage in a suspected drug transaction outside a motel with a reputation for illegal drug activity. They were present in response to a tip that someone was selling drugs from the motel, and upon their arrival shortly before midnight, they saw the appellant standing alone outside the motel. When a car drove up to the appellant, he leaned his head and arms into the vehicle and emerged with money visible in his hand.

During the consensual encounter and search of the appellant that followed, Sapp felt a soft powdery substance rather than capsules like in Cost, and he discovered the substance secreted in the appellant's sock rather than in his pocket. "The object detected by [the investigator] was not a facially innocent vessel of a type employed by law-abiding citizens, on a daily basis, for legitimate uses. It was, on the contrary, an unnatural mass, carried in a manner of concealment, consistent with the transportation of illegal drugs." Ruffin v. Commonwealth, 13 Va. App. 206, 211, 409 S.E.2d 177, 180 (1991). At that point, the appellant, unlike the defendant in Cost, went to great lengths to try to keep Sapp away from the substance, attempting to deflect Sapp's hand and to flee.

Under the totality of the circumstances—including the suspected drug transaction, the nature and location of the substance that Sapp felt in the appellant's sock during the consensual search, Sapp's prior experience finding drugs in other people's socks, and the appellant's resistance and attempted flight—Sapp had probable cause to seize the bag from the appellant's sock. See Camden, 17 Va. App. at 726-28, 441 S.E.2d at 39-40; Ruffin, 13 Va. App. at 207-08, 211, 409 S.E.2d at 178, 180.

Consequently, the evidence supports the ruling that the encounter with the appellant, the search of his person, and the seizure of the drugs from his sock were reasonable under the Fourth Amendment. The court's denial of the motion to suppress the heroin and marijuana found on the appellant's person was not error.

*B. Search of the Appellant's Bag in the Motel Room*

The appellant also challenges the search of the bag that the police found in the motel room occupied by his girlfriend. He contends that the officers lacked authority to search the bag because, although his girlfriend consented to a search of the motel room itself, she identified the bag as belonging to the appellant and the police did not obtain his consent prior to examining the bag's contents. The Commonwealth asserts that the appellant had no reasonable expectation of privacy in the bag's contents because his girlfriend had joint access to the bag and consented to a search of the room. The Commonwealth further contends that even if the search of the bag was unreasonable, the admission of evidence of its contents at trial was harmless in light of other evidence in the record.

1. Expectation of Privacy and Consent to Search

Determining whether the appellant had a reasonable expectation of privacy in the bag located in the motel room involves an overlapping two-pronged test. A defendant must first show "that he personally ha[d] an expectation of privacy in the place [or thing] searched." Rideout v. Commonwealth, 62 Va. App. 779, 786, 753 S.E.2d 595, 599 (2014) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)). In evaluating this prong, the Court must determine "whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy,' [*i.e.*,] whether . . . the individual has shown that 'he seeks to preserve [the place or thing] as private.'" Id. at 787, 753 S.E.2d at 599 (citation omitted) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Second, a defendant must establish that his expectation "[was] objectively 'reasonable' based on 'a source outside of the Fourth Amendment.'" Sanders v. Commonwealth, 64 Va. App.

734, 744, 772 S.E.2d 15, 20 (2015) (quoting Rideout, 62 Va. App. at 786, 753 S.E.2d at 599).  The

defendant may prove such an expectation "by reference to either: (1) 'concepts of real or personal

property law' or (2) 'understandings that are recognized and permitted by society.'"  Id. (quoting

United States v. Jones, 132 S. Ct. 945, 951 (2012)).  "In determining whether an expectation of

privacy is objectively reasonable, a court looks to the totality of the circumstances . . . ."  Atkins v.

Commonwealth, 57 Va. App. 2, 13, 698 S.E.2d 249, 254 (2010).  Those circumstances include

"whether the defendant has a possessory interest in the thing seized or the place searched, whether

he has the right to exclude others from that place, whether he has exhibited a subjective expectation

that it would remain free from governmental invasion, whether he took normal precautions to

maintain his privacy and whether he was legitimately on the premises."  United States v. Haydel,

649 F.2d 1152, 1155 (5th Cir. 1981), quoted with approval in McCoy v. Commonwealth, 2

Va. App. 309, 312, 343 S.E.2d 383, 385 (1986).  Whether the defendant had an objectively

reasonable expectation of privacy "based on a property interest or other societal norm . . . is a legal

determination that we review *de novo*."  Sanders, 64 Va. App. at 744, 772 S.E.2d at 20.

The appellant conceded below that he did not prove an objectively reasonable expectation of

privacy in the room, but he argues that this fact is not dispositive.  We agree with the appellant's

assessment that his lack of an objectively reasonable expectation of privacy in the room does not

resolve the question of whether he nevertheless maintained such an expectation in the bag and its

contents.  See Rakas v. Illinois, 439 U.S. 128, 142 n.11, 149 n.16 (1978); see also, e.g., State v.

Callari, 478 A.2d 592, 595-96 (Conn. 1984) (noting that although the defendant could not challenge

the search of a residence, he was "not precluded from contesting the search of his suitcase" because,

- 14 -

due in part to his ownership of it, "he possesse[d] an expectation of privacy in it").[5] Consequently, we proceed to examine whether the appellant proved a reasonable expectation of privacy *in the bag*.

Regarding the appellant's *subjective* expectation of privacy, the Commonwealth's evidence established that the appellant left the bag with his girlfriend Tanya in the motel room, which was only a short distance from where the officers encountered him in the motel parking lot. No one else was present in the motel room, and Investigator Sapp concluded that Tanya was the lessee because she "seemed to have control" of the room. The evidence also showed that the appellant planned to reunite with his girlfriend after the drug transaction ended, as indicated by his request to the officers to go to the room and notify her of his arrest. Additionally, before Sapp looked inside the bag, Tanya told him that the bag belonged to the appellant. She made no claim of joint ownership. Further, no evidence in the record indicates that the appellant disclaimed ownership of the bag or its contents. See Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989). Finally, nothing suggests that the bag was open or transparent, thereby placing its contents in plain view, or that the nature of any of its contents was otherwise discernable through the plastic based on a distinctive shape. Consequently, the evidence establishes that the appellant exhibited a subjective expectation of privacy in the contents of the bag.

Regarding whether the appellant's subjective expectation of privacy in the bag was one that society is prepared to recognize as *objectively* reasonable, we first note that the Fourth Amendment "protects alike the 'traveler who carries a toothbrush and a few articles of clothing in a paper

---

[5] Courts have reached this conclusion under both traditional "standing" analysis and the "reasonable expectation of privacy" analysis of Rakas, 439 U.S. at 139-40. Compare United States v. Fultz, 146 F.3d 1102, 1106 (9th Cir. 1998) (plastic bags and cardboard boxes), and United States v. Alberts, 721 F.2d 636, 639-40 (8th Cir. 1983) (trash bags), with Combs v. United States, 408 U.S. 224, 225-28 (1972) (*per curiam*) (remanding for a standing determination where the defendant had no property interest in the searched premises but owned goods stored on them), and Simmons v. United States, 390 U.S. 377, 391 (1968) (noting that the defendant could prove standing to object to the search of a suitcase found on the premises of another by "testify[ing] that he was its owner").

bag' and 'the sophisticated executive with the locked attaché case.'" Smith v. Ohio, 494 U.S. 541, 542 (1990) (*per curiam*) (quoting United States v. Ross, 456 U.S. 798, 822 (1982)), quoted with approval in Al-Karrien v. Commonwealth, 38 Va. App. 35, 42, 561 S.E.2d 747, 751 (2002); see Arnold v. Commonwealth, 17 Va. App. 313, 316-17 & n.1, 437 S.E.2d 235, 237 & n.1 (1993). Additionally, we observe that the easy cases in which to determine whether one maintains an objectively reasonable expectation of privacy in personal property lie at the poles. At one extreme, an individual generally maintains such an expectation in an item on or adjacent to his person. See Arnold, 17 Va. App. at 316, 437 S.E.2d at 237. Conversely, one who discards an item or leaves it unattended in a public place is usually deemed to have abandoned any objectively reasonable expectation of privacy in it. See Knight v. Commonwealth, 61 Va. App. 297, 308-09, 734 S.E.2d 716, 722 (2012).

Here, the appellant's behavior regarding the bag and its contents fell between these two extremes. We hold based on the totality of the circumstances, viewed in the light most favorable to the Commonwealth, that the appellant retained an expectation of privacy in the contents of the bag that society was prepared to recognize as objectively reasonable. The items were inside the bag, and no evidence indicates that the character of the items was apparent from outside the bag. The appellant left the bag in the motel room with his girlfriend, who was alone in the room when law enforcement arrived. The police believed that she had control of the room, and the evidence showed that the appellant intended to reunite with her after the drug transaction. See United States v. Morgan, 936 F.2d 1561, 1570-71 (10th Cir. 1991) (observing that leaving an item in the care of another may refute an intent to abandon it); cf. Knight, 61 Va. App. at 309 n.5, 734 S.E.2d at 722 n.5 (noting in *dicta* that an owner generally retains a reasonable expectation of privacy even in lost property, subject to the finder's examining it to identify its owner). Further, before the search occurred, the appellant's girlfriend specifically identified the bag as belonging to the

appellant. These facts prove that the appellant retained an objectively reasonable expectation of privacy in the bag.

Once a defendant establishes that he had a reasonable expectation of privacy in an item and that the police searched it without a warrant, the burden shifts to the Commonwealth to prove that an exception to the warrant requirement rendered a search of the item reasonable. See, e.g., Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 640 (2001). The Commonwealth contends here that the appellant's girlfriend had authority to consent to a search of the appellant's bag and in fact did so.

A consent search by law enforcement officers may be "reasonable when conducted pursuant to voluntary consent offered not by the defendant . . . but by a third party who shares access to the . . . object being searched." Glenn, 275 Va. at 130, 654 S.E.2d at 913. The person authorizing the search can be one with either actual or apparent authority. Id. at 132, 654 S.E.2d at 914.

Actual authority exists where the third party has "(1) mutual use of the property by virtue of joint access[] or (2) control for most purposes." Id. (quoting United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007)). However, the mere fact that a container owned by one person is located on residential premises belonging to or under the control of another does not mean that the person in charge of the premises has actual authority to consent to a search of the container. Compare id. at 129, 133, 654 S.E.2d at 912, 915 (holding that where a container belonged exclusively to the defendant, who lived on particular premises with the owner's permission, the owner of the premises did not have actual authority to consent to a search of the container), with Frazier v. Cupp, 394 U.S. 731, 740 (1969) (holding that where a defendant left his duffel bag at his cousin's house and authorized the cousin to use the bag, the cousin "clearly had authority to consent to its search").

If actual authority is lacking, apparent authority may render the search reasonable. Apparent authority exists "when an officer reasonably, even if erroneously, believes the third party possesses

authority to consent" to the search. Glenn, 275 Va. at 133, 654 S.E.2d at 914 (quoting Andrus, 483 F.3d at 716). Whether apparent authority exists is an objective inquiry that requires examination of the totality of the circumstances to determine "whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search." Id. (quoting Andrus, 483 F.3d at 716-17).

Ordinarily, where a third party with actual or apparent authority provides a "general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area." Vaughan v. Commonwealth, 53 Va. App. 435, 440, 672 S.E.2d 909, 912 (2009) (quoting United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2003) (citing Florida v. Jimeno, 500 U.S. 248, 251 (1991))); see also Glenn, 275 Va. at 135, 654 S.E.2d at 916 (noting that a "contrary rule would impose an impossible burden on the police" (quoting United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir. 2000))). However, if the consenter volunteers ownership information about a particular container or the police "ma[k]e [inquiry]," they "must be reasonable in drawing conclusions from the responses received." 4 Wayne R. LaFave, Search and Seizure § 8.3(g), at 245 n.171 (5th ed. 2012); see Glenn, 275 Va. at 135, 654 S.E.2d at 916 (stating that a search is reasonable where the police "do not have reliable information that the container is *not* under the authorizer's control" (quoting Melgar, 227 F.3d at 1041)).

Applying these principles in Glenn, 275 Va. 123, 654 S.E.2d 910, the Supreme Court of Virginia held that consent to search a residence, coupled with an absence of information that any containers within the area belonged to someone other than the consenter, made it "objectively reasonable" for the officers to conclude that they had apparent authority to search a backpack in the residence. 275 Va. at 133-34, 136, 654 S.E.2d at 915, 916. The Court noted that the backpack could have belonged to any of the occupants of the premises and that "some ambiguity attended the

ownership and ability to access the backpack." Id. at 134, 654 S.E.2d at 915. Nevertheless, it held that this ambiguity was not controlling on the issue of apparent authority and the search was reasonable. Id. The Court observed, by contrast, that if the backpack had "borne Glenn's name or other identifying marks," or if it had been "locked or secreted among possessions which were exclusively Glenn's, there would likely be few circumstances where an objectively reasonable police officer could conclude [that Glenn's grandfather, the owner of the premises,] had the authority to consent to a search of the bag." Id. at 133, 654 S.E.2d at 915.

The Supreme Court contrasted this situation with the facts in Krise v. State, 746 N.E.2d 957 (Ind. 2001), which involved a man and a woman who shared an apartment. Glenn, 275 Va. at 136 n.3, 654 S.E.2d at 916 n.3. The police obtained consent from the man to search the apartment in the woman's absence. Id. The Supreme Court of Virginia accepted the conclusion that the officer who searched a purse found in the house "knew that the handbag was a woman's purse and that Krise was the only woman living in the house." Id. (quoting Krise, 746 N.E.2d at 971). On those facts, the Supreme Court opined that the Indiana court "correctly held police could not have reasonably believed the [man] had the authority to consent to a search of the [woman's] purse." Id.

Guided by Glenn, we reach a similar result here. In the appellant's case, it was unreasonable for Investigator Sapp to conclude that the appellant's girlfriend had the authority to consent to the search of the bag because she specifically told Sapp that the bag belonged to the appellant. Sapp was not required to speculate about who owned it. See also, e.g., United States v. Zapata-Tamallo, 833 F.2d 25, 27 (2d Cir. 1987) (recognizing that consent to search provided by the owner of premises "is generally invalid when it is 'obvious' that the searched item belongs to a guest" (quoting United States v. Isom, 588 F.2d 858, 861 (2d Cir. 1977))). Compare United States v. Salinas-Cano, 959 F.2d 861, 863-65 (10th Cir. 1992) (holding that girlfriend lacked actual or apparent authority to consent to the search of her boyfriend's bag, which he stored in her

apartment, because she identified the bag as his and no evidence indicated that she "exercised mutual use or possessed . . . joint interest and control over [it]"), with United States v. Ruiz, 428 F.3d 877, 881-82 (9th Cir. 2005) (holding that a resident had apparent authority to consent to the search of a gun case in plain view on a living room shelf even though he "disclaimed knowledge" regarding its contents because he "did not disclaim ownership of or access to the case"). Accordingly, we hold that it was unreasonable for Sapp to conclude that the appellant's girlfriend had apparent authority to consent to a search of the bag and had, in fact, given such consent.[6]

In sum, based on these facts, Sapp could not reasonably have believed that the girlfriend had actual or apparent authority to consent to a search of the bag. Consequently, the search was unreasonable under the Fourth Amendment.

### 2. Remedy for Fourth Amendment Violation

Not all evidence obtained in violation of the Fourth Amendment is subject to exclusion. To trigger the Fourth Amendment exclusionary rule, "the challenged 'police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" Washington v. Commonwealth, 60 Va. App. 427, 436, 728 S.E.2d 521, 525 (2012) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of

---

[6] The decision in Fernandez v. California, 134 S. Ct. 1126 (2014), relied upon by the Commonwealth, does not support a different result. Fernandez is the most recent ruling in a line of United States Supreme Court cases involving the authority of a co-occupant of shared premises to consent to the search of those premises as long as another co-occupant is not present and objecting. Id. at 1132-37. Fernandez did not address the impact of the present co-occupant's consent to a premises search on the ability of law enforcement to search closed containers on the premises. See id.; United States v. Peyton, 745 F.3d 546, 556 (D.C. Cir. 2014) (concluding that Fernandez was limited to whether Fernandez's "earlier objection barred the subsequent consent search" of the premises and did not govern whether the container search at issue in Peyton was reasonable).

some right." Knight, 61 Va. App. at 311, 734 S.E.2d at 723 (quoting Michigan v. Tucker, 417 U.S. 433, 447 (1974)). Whether the police have engaged in conduct sufficient to trigger the exclusionary rule, like most other Fourth Amendment analysis, is governed by an objective question. Heien v. North Carolina, 135 S. Ct. 530, 536, 539-40 (2014). Here, the question is whether a reasonably well-trained police officer would have known that the action was illegal in light of all of the circumstances, including the "officer's understanding of [both] the facts and . . . the relevant law." Id. (noting that the law that the officer misapplied had never been construed by the state's appellate courts and that his misapplication was reasonable).

The Commonwealth does not challenge the appropriateness of exclusion in this case, thereby conceding that if the search was unreasonable, exclusion was proper. Although this Court is not bound by a party's concessions of law, it may "agree with the Commonwealth's concessions based on [its] independent review of the record." Rivera v. Commonwealth, 65 Va. App. 379, 384-85 & n.3, 778 S.E.2d 144, 147 & n.3 (2015). Investigator Sapp's search of the bag was a deliberate act, and it is undisputed that the appellant's girlfriend told Sapp prior to the search that the bag belonged to the appellant. Additionally, based on the decision in Glenn, issued more than five years before the search of the appellant's bag, it was objectively unreasonable for Sapp to have believed that the girlfriend could authorize a search of that bag. See Heien, 135 S. Ct. at 539-40.

Consequently, we conclude based on our independent examination that suppression of the evidence obtained in the unreasonable search of the bag is the appropriate remedy in this case.[7]

### 3. Harmless Error

The Commonwealth contends that even if the search of the bag was error, the admission of evidence of the bag's contents was harmless. See Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990). An error of constitutional magnitude, such as one involving a violation of the Fourth Amendment, is harmless only if the appellate court "[is] able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967); see Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman, 386 U.S. at 23). Harmless error analysis is not "simply a sufficiency of the evidence analysis." Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (*en banc*) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992)). Therefore, an error does not affect the verdict only if we can determine, "without usurping the [trial court's] fact finding function, that[] had the error not occurred, the verdict would have been the same." Cairns v. Commonwealth, 40 Va. App. 271, 286, 579 S.E.2d 340, 347 (2003).

---

[7] On the facts and procedural posture of this case, we do not consider the possible application of the inevitable discovery doctrine. In order for the contents of an item searched in violation of the Fourth Amendment to be admissible on such grounds, the prosecution must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Commonwealth v. Jones, 267 Va. 532, 536, 593 S.E.2d 204, 206 (2004) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). When this burden is met, "the deterrence rationale [for exclusion] has so little basis that the evidence should be received." Nix, 467 U.S. at 444. However, the "inevitable discovery doctrine cannot rescue evidence obtained via an unlawful search *simply because probable cause existed to obtain a warrant* when the government presents *no* evidence that the police would have obtained a warrant. Any other rule would emasculate the Fourth Amendment." United States v. Allen, 159 F.3d 832, 842 (4th Cir. 1998) (first emphasis added). The Commonwealth did not present any such evidence below and does not argue on appeal that law enforcement would inevitably have discovered the items in the bag pursuant to a warrant if the Fourth Amendment violation had not occurred.

Here, the Commonwealth's proof that the appellant possessed the heroin found on his person with the intent to distribute it was strong even without the additional evidence of distribution found in the bag in the motel room. The evidence established that the appellant had more than four grams of heroin in three packages of different weights on his person. The expert testified that a typical user of heroin would have no more than a gram of heroin in his possession at one time. He explained further that a "big time user" would have something on his person with which to ingest the drug, most likely a syringe, and no ingestion device was found on the appellant's person. He also opined that the appellant's possession of different denominations of money in different pockets, along with two cell phones rather than one, was consistent with drug distribution. Additionally, the expert testified that considering only the evidence found on the appellant's person, that evidence was inconsistent with possession for personal use. However, in convicting the appellant, the trial judge expressly stated that she considered "the combination . . . of all the various factors," including "the drugs . . . and various other indicia of distribution." This reference is clearly broad enough to encompass the digital scale, box of empty plastic bags, and 200 empty capsules found in the bag in the motel room. Based on the record, this Court cannot determine beyond a reasonable doubt, without usurping the trial court's fact finding function, that the disputed evidence was merely cumulative and that the outcome would have been the same without the improperly admitted evidence from the bag. Consequently, we conclude that the erroneous admission of the evidence was not harmless.

## III. CONCLUSION

We hold that the evidence, viewed under the proper standard, supports the determination that the initial encounter was consensual and the appellant voluntarily consented to the search of his person. Additionally, even if the appellant withdrew that consent in the course of the search, probable cause supported the seizure of the drugs from the appellant's sock. Regarding the search

of the bag in the motel room, the appellant established a reasonable expectation of privacy in the bag. The Commonwealth failed to prove that the appellant's girlfriend had actual or apparent authority to consent to a search of the appellant's bag. Further, exclusion of the evidence from the bag is the appropriate remedy in light of the clear rule set out by applicable legal precedent. Finally, admission of the contents of the bag was not harmless on the record in this case. Accordingly, we affirm the conviction for possession of marijuana, reverse the conviction for possession of heroin with intent to distribute, and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Affirmed in part, reversed in part, and remanded.</u>