PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Alston and Russell
Argued at Lexington, Virginia

KANIESHA SHATAE HANNON

v.        Record No. 1374-16-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
AUGUST 22, 2017

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Caitlin Reynolds-Vivanco, Assistant Public Defender, for appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Kaniesha Shatae Hannon, appellant, was convicted of two counts of felony child

endangerment in violation of Code § 18.2-371.1(B)(1).  On appeal, she contends the evidence is

insufficient to sustain her convictions.  We agree with appellant and reverse her convictions.

BACKGROUND

Because the parties submitted the case to the trial court on stipulated evidence, the

evidence is not in dispute.

At 6:12 p.m. on November 8, 2015, Deputy R.M. Turner responded to a call that two

small children had been left unattended in a parked car in the parking lot of a Dollar General

store.  Deputy Turner arrived at the parking lot and located a five-year-old boy and a

four-month-old girl sitting in a car with unlocked doors.  The temperature outside was forty-eight

degrees.  Deputy Turner spoke with the boy, who told the deputy that he and his sister were

"OK."  A man sitting in his car beside the car containing the children told Deputy Turner that the

children had been alone in the car for approximately ten minutes before the deputy arrived.

Appellant then came out from the store and questioned Deputy Turner as to why he was talking to her children. He explained that she had left her children in the unlocked car in a public parking lot "where numerous vehicles were coming in and out." The manager of the store came outside and advised Deputy Turner that the store's video surveillance system had recorded appellant going into and coming out of the store. The video revealed that appellant was inside the store for a total of fourteen minutes and thirty-four seconds.

Deputy Turner contacted Child Protective Services, and a CPS worker came to the scene. The CPS worker informed appellant that the children would have to be placed in someone else's custody for the night. Arrangements were made for appellant's mother to take custody of the children for the night. CPS directed appellant to report to their offices in the morning to discuss the incident. CPS conducted a family assessment, concluded that a complaint was unfounded, and returned the children to the custody of appellant, where they remained at the time of trial.

Having heard the stipulated evidence and the argument of counsel, the trial court took the matter under advisement. In a letter opinion, the trial court, relying upon this Court's decision in Miller v. Commonwealth, 64 Va. App. 527, 769 S.E.2d 706 (2015), found appellant guilty of violating Code § 18.2-371.1(B)(1). In the opinion letter, the trial court explained its reasoning:

> Leaving small children unsupervised in an unlocked car poses a substantial risk for injury - or death. The five year-old in Ms. Hannon's car could have exited the car and faced various types of danger, leaving the four-month old alone. Both children, moreover, were susceptible to a stranger entering the unlocked car; that person could have stolen the car, abducted the children, or committed some other crime. At such young ages, both children faced serious danger being left alone in [an] unlocked car.

The trial court observed that the facts in Miller "seem a bit more 'serious' in terms of length of time the children were left alone, etc." The trial court also recognized that the conviction in Miller was for violation of Code § 18.2-371, a misdemeanor, as opposed to Code § 18.2-371.1(B)(1), the felony provision under which appellant was charged. Ultimately, despite

- 2 -

the differences, the trial court found the situations sufficiently analogous and <u>Miller</u> sufficiently persuasive to convict appellant of the two felony counts.

Appellant argues that the evidence was insufficient to meet the felony standard. Specifically, she argues that the evidence did not establish she acted with a reckless disregard for human life, emphasizing that the five year old was old enough to call for help had any danger arisen during the short time the children were left unattended.

## ANALYSIS

### I. Standard of Review

Ordinarily, when faced with "a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved." <u>Smith v. Commonwealth</u>, 282 Va. 449, 453, 718 S.E.2d 452, 454 (2011). Here, there is no dispute as to the "facts proved"; rather, the parties disagree as to whether the undisputed facts satisfy the elements necessary to support a conviction for violation of Code § 18.2-371.1(B)(1). "[W]hen an appeal presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a statute, we must construe statutory language to answer the question. That function presents a pure question of law which we consider *de novo* on appeal." <u>Id.</u> at 453-54, 718 S.E.2d at 454; <u>see also</u> <u>Hodges v. Commonwealth</u>, 64 Va. App. 687, 693, 771 S.E.2d 693, 696 (2015).

### II. Parental Inattention as Criminal Conduct

Once again, we are called upon to address when less-than-diligent parenting becomes criminal, and, if criminal, whether such inattention constitutes a felony. In doing so, we note that the policy determinations underlying the statutory classifications have been made by the General Assembly; our task is merely to apply the established statutory standards to individual cases. <u>See</u> <u>Daily Press, LLC v. Office of the Exec. Sec'y</u>, ___ Va. ___, ___, 800 S.E.2d 822, 824 (2017)

("Public policy questions concerning where to draw the line . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, our function is limited to adjudicating . . . question[s] of law . . . .").

The General Assembly expressly has recognized the fundamental nature of the parent child relationship. Code § 1-240.1 provides that "[a] parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child." Thus, although there are varied opinions about what constitutes "good parenting" and the appropriate level of parental supervision, parents are afforded a great deal of latitude regarding the care of their children.

This latitude, however, is not without bounds. The Commonwealth has a legitimate interest in preserving the physical safety of children. Knox v. Lynchburg Div. of Social Servs., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982) ("[T]he protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest." (citing Stanley v. Illinois, 405 U.S. 645, 652 (1972))). Accordingly, the General Assembly can (and has) criminalized certain actions or inaction by parents, guardians or other custodians that either cause harm to children or place children in situations where harm is likely to occur.

To that end, the General Assembly enacted Code § 18.2-317.1(B)(1), which provides that

> [a]ny parent, guardian, or other person responsible for the care of a
> child under the age of 18 whose willful act or omission in the care
> of such child was so gross, wanton, and culpable as to show a
> reckless disregard for human life is guilty of a Class 6 felony.

In reviewing the elements necessary to support a conviction for a violation of Code § 18.2-371.1(B)(1), we first note that the statute does not require that a child actually suffer

- 4 -

an injury as a result of a parent's act or omission.[1]  Commonwealth v. Duncan, 267 Va. 377, 385,

593 S.E.2d 210, 215 (2004).  "The absence of an injury requirement in subsection (B)(1) . . .

demonstrates a legislative intent to prohibit conduct that also has the potential of endangering a

child's life."  Id.  Nevertheless, the mere fact that a child might be faced with a theoretical

danger is insufficient to support a conviction under the statute.  Jones v. Commonwealth, 272

Va. 692, 701, 636 S.E.2d 403, 408 (2006) ("[A] conviction under Code § 18.2-371.1(B)(1)

requires more than a mere possibility of harm.").  Rather, the act or omission must give rise to a

"substantial or probable risk of harm."  Id.

The remaining elements of the statute require "the Commonwealth [to] prove beyond a

reasonable doubt that the accused (1) committed a 'willful act or omission in the care' of a child,

and (2) that the act or omission is 'so gross, wanton, and culpable as to show a reckless disregard

for human life.'"  Coomer v. Commonwealth, 67 Va. App. 537, 545-46, 797 S.E.2d 787, 791

(2017).  We address each element in turn.

For purposes of Code § 18.2-371.1(B)(1), "[t]he term 'willful act [or omission]' imports

knowledge and consciousness that injury *will* result from the act [or omission].  The act [or

omission] must be intended or it must involve a reckless disregard for the rights of another and

---

[1] Actual injury *is* an element of the offense proscribed by Code § 18.2-371.1(A), which provides, in pertinent part, that

> [a]ny parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health *causes or permits serious injury to the life or health of such child* is guilty of a Class 4 felony.  For purposes of this subsection, "serious injury" includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life-threatening internal injuries.

(Emphasis added).

*will probably* result in an injury." Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004). In short, a parent's act or omission is "willful" as used in Code § 18.2-371.1(B)(1) only if an objectively reasonable person would understand that injury to the child is likely to result.

Similarly, whether the statutory requirement that the act or omission "so gross, wanton, and culpable as to show a reckless disregard for human life" has been met turns on whether an injury to the child is likely to occur as a result of the act or omission. As the Supreme Court has held regarding Code § 18.2-371.1(B)(1):

> The term "gross, wanton, and culpable" describes conduct. The word "gross" means aggravated or increased negligence while the word "culpable" means deserving of blame or censure. "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, *under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned*, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

Barrett, 268 Va. at 183, 597 S.E.2d at 111 (emphasis added) (some internal quotation marks and citations omitted).

Here, there is no question that appellant intentionally left her two children unsupervised and alone in an unlocked car in the Dollar General parking lot while she shopped. Thus, the question becomes whether or not an objectively reasonable person would have understood that injury to the children was *likely* to result.

The evidence established that the children were unsupervised in the parking lot for just under fifteen minutes. Although the stipulated evidence indicated that Deputy Turner said that "vehicles were coming in and out," there was no evidence that the parking lot was anything other than a normal parking lot or that the traffic there was any greater than would pass outside the children's home. There was no evidence that the parking lot was in a high crime area or that an

objective observer would have been aware of any unusual dangers posed by that location if any had existed. There was nothing extreme or dangerous about the temperature, and there was no evidence to establish that the children were not appropriately dressed for the weather conditions.[2]

Thus, the question becomes, absent extenuating factors not present here, whether leaving two children in this setting, unsupervised for less than fifteen minutes, is *likely* to result in injury to those children.[3] Although there are a myriad of *possible* ways one could imagine that the children might have been injured, even the aggregation of those possibilities does not result in a situation where the children were *likely* to suffer injury. Accordingly, appellant's conduct here is insufficient to support a felony conviction under Code § 18.2-371.1(B)(1).

Any doubt that the risk of injury to the children here is insufficient to support the conviction is removed by our recent decision in Coomer, which was decided after the trial in this case. In Coomer, the parent was charged with a violation of Code § 18.2-371.1(B)(1) for placing her child in a car and driving that car on wet, curvy roads in the dark while legally intoxicated (a BAC in excess of .09). 67 Va. App. at 542, 797 S.E.2d at 789. Even though operating a motor vehicle in such a state in such conditions unquestionably increases the likelihood of an accident

---

[2] The Commonwealth argues that, by taking her children to the Dollar General, appellant removed the children from the "safety of the home." There was no evidence to suggest that the children were at greater risk of injury in the parking lot than they would have been if left unsupervised for fifteen minutes at their home, on their front porch, or in their front yard.

[3] We acknowledge that leaving young children unattended in a car can give rise to a sufficient likelihood of injury to support a felony conviction. See, e.g., Kelly v. Commonwealth, 42 Va. App. 347, 592 S.E.2d 353 (2004) (leaving a child unattended in car for seven hours on a very hot day, combined with evidence establishing that the child would have required food, drink, sleep, and diaper changes over the course of the time left in car and the parent's known history of leaving children in locked cars, is sufficient to support a conviction for violation of Code § 18.2-371.1(B)(1)). However, such cases turn on particular facts such as length of time in the car, environmental conditions, knowledge of prior problems with either the children, parent or location, the children's likely need of services/attention in the time period, etc. Here, no evidence was offered to establish any exacerbating factors needed to support a finding of a likelihood of harm.

and resultant injury, a panel of this Court concluded "*the mere speculative possibility of harm alone was insufficient for conviction pursuant to Code § 18.2-371.1(B)(1) in this case.*" Id. at 551, 797 S.E.2d at 794 (emphasis added).

It is beyond cavil that the child in Coomer was exposed to a higher risk of injury than the children here. At oral argument, the Commonwealth, with credible candor, conceded that the child in Coomer was faced with a higher risk of injury than the children here.[4] Because the panel's decision in Coomer is binding upon us, it dictates that we reverse appellant's conviction. Butler v. Commonwealth, 64 Va. App. 7, 12, 763 S.E.2d 829, 832 (2014) ("Under the interpanel accord doctrine, [a subsequent panel] lack[s] the authority to revisit" prior published opinions of the Court of Appeals.); Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (*en banc*) (noting that published panel opinions of the Court of Appeals "bind all other three-judge panels under the interpanel accord doctrine").

The trial court's reliance on our decision in Miller, albeit understandable given that both cases dealt with leaving unattended children in cars at shopping center parking lots, was misplaced. First, the defendant in Miller was not charged with a violation of Code § 18.2-371.1(B)(1). Rather, she was charged with a violation of Code § 18.2-371, a misdemeanor.

Code § 18.2-371 provides, in pertinent part, that

> [a]ny person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor.

---

[4] There is nothing inappropriate or inconsistent with the Commonwealth defending the conviction here while acknowledging that the risk of harm to the children here was less than the level we found insufficient to sustain a conviction in Coomer. Disagreeing with our decision, the Commonwealth has appealed Coomer to the Supreme Court. Because the Supreme Court has yet to act on the Commonwealth's appeal, Coomer continues to bind this panel.

In <u>Miller</u>, the prosecution proceeded under a theory that the children left in the car were "abused or neglected" for the reason specified in Code § 16.1-228(5), which provides, in pertinent part, that a child is "abused or neglected" when that child "is without parental care or guardianship caused by the unreasonable absence . . . of the child's parent, guardian, legal custodian, or other person standing *in loco parentis* . . . ." Thus, unlike the felony statute at issue here, the misdemeanor statute at issue in <u>Miller</u> does not include as express elements that the parent's actions demonstrate a "reckless disregard for human life . . ." or that those actions be "gross" or "wanton." This is sufficient to distinguish <u>Miller</u> from this case.[5]

Furthermore, as the trial court recognized in its letter opinion, the facts in <u>Miller</u> were far more egregious than the facts here. This Court summarized the facts in <u>Miller</u> as follows:

> [Miller] left her young child in a car with its engine running and the windows open. She double parked the vehicle in a fire lane where parking was clearly marked as prohibited. She went inside the store, leaving the child unattended. At some point she asked an employee, a complete stranger to her, if he would "watch her car outside for about five minutes." Despite [Miller's] representation to that employee that she would be gone for only five minutes,

---

[5] Making the <u>Miller</u> decision more confusing, the jury in <u>Miller</u> was provided, without objection, an instruction designed not for prosecutions under Code § 18.2-371, but rather, Code § 18.2-371.1. As the panel noted in <u>Miller</u>:

> This instruction became the law of the case. The commentary accompanying the model jury instruction defining willfulness states that it applies to prosecutions under Code § 18.2-371.1, which covers felony child abuse or neglect. <u>See</u> Va. Model Jury Instr. — Criminal, No. 29.360 cmt. Because this instruction has become the law of the case, we use the various decisions analyzing willfulness in the context of Code § 18.2-371.1 and the related felony in Code § 40.1-103 in resolving the appellant's challenge to this element of the misdemeanor proscribed by Code § 18.2-371. Nevertheless, these cases are not controlling in all respects because of the differences in other elements in the various statutes.

<u>Miller</u>, 64 Va. App. at 543 n.4, 769 S.E.2d at 713 n.4. Thus, although this Court's opinion in <u>Miller</u> does analyze the meaning of "willful," the analysis is not controlling here because <u>Miller</u> never discussed the "gross and wanton" aspects of the felony child neglect statute and limited its analysis to the facts of that case as compared to the other felony cases cited as authority.

> thirty minutes later, the employee needed to return to his post in the store so, on his own volition, he asked another employee, also a stranger to [Miller], to watch the car. [The second employee] agreed to do so only on a limited basis. After another five to ten minutes, [Miller] came outside and removed the keys from the car. Despite the fact that she did not know this second employee who was near her car and child, and had not enlisted her to watch the child, [Miller] simply told the employee that she would be back in a few minutes and went back inside the store. After about another twenty to thirty minutes, the second employee went back inside the store, leaving the child and car unattended.

Miller, 64 Va. App. at 542, 769 S.E.2d at 713. Properly understood, the holding in Miller is that the conduct at issue, which is far more egregious than the conduct in this case, was more than sufficient to support a misdemeanor conviction under Code § 18.2-371; it does not stand for the proposition that the less egregious conduct here supports a felony conviction under Code § 18.2-371.1(B)(1).

CONCLUSION

Finding that the undisputed evidence is insufficient to support appellant's convictions, we reverse the judgment of the trial court. Our reversal of appellant's convictions should not be viewed as endorsing or condoning her parenting choices. Coomer, 67 Va. App. at 551, 797 S.E.2d at 794 (noting that, despite reversing the conviction for violation of Code § 18.2-371.1(B)(1), "[w]e do not in any way condone [the defendant's] actions in operating a motor vehicle while intoxicated and with her child in the car"); see also Shifflett v. Commonwealth, No. 1032-11-2, 2012 Va. App. LEXIS 391, at *15 (Va. Ct. App. Dec. 4, 2012) ("We in no way condone appellant's illegal behavior, which certainly constitutes appalling parenting. [Code § 18.2-371.1(B)(1)], however, does not punish appalling parenting."). Rather, it is simply a recognition that the evidence in this case did not establish an element of the offense charged – that the children were likely to suffer injury as a result of appellant's conduct.

Reversed and final judgment.