COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Russell and Malveaux
Argued at Richmond, Virginia

LESLIE ITUTU CAMP

v.      Record No. 0483-17-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
MAY 8, 2018

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

James Joseph Ilijevich for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant, Leslie Itutu Camp, was convicted of two counts of felony child neglect

pursuant to Code § 18.2-371.1(B).[1]  She contends the evidence was insufficient to support her

convictions.  Specifically, she contends the trial court erred "when it relied upon evidence of an

elevated" blood alcohol content (BAC) to support her convictions for felony child neglect.  We

disagree and affirm.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below."  Smallwood

v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v.

Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).  This principle requires us to

---

[1] Appellant also was convicted of driving while intoxicated, third or subsequent offense; refusal of breath test, third offense; and driving while intoxicated while her license was revoked for a prior conviction for driving while intoxicated.  On appeal she challenges only her convictions for felony child neglect under Code § 18.2-371.1(B).

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence establishes that, on the evening of December 25, 2014, Fredericksburg police officer Aheleza Lasco was on patrol in his marked police vehicle. While at an intersection at approximately 8:24 p.m., he observed an SUV on which both driver's side tires were completely flat. The SUV, driven by appellant, had difficulty making a turn into the intersection, nearly striking Lasco's patrol car. Lasco then followed appellant's vehicle into an apartment complex parking lot. Appellant and her two children, then seven and twelve years old, were exiting the SUV when Lasco approached.

Lasco initially believed appellant had been in an accident and needed assistance. When he asked her about the tires, she responded that she was "not aware" that the tires were flat. Initially, she was evasive to the point of "almost ignoring" Lasco. She then stated "something to the effect she'd hit a median somewhere." As they were speaking, Lasco smelled alcohol coming from appellant. When Lasco asked appellant if she had been drinking, she stated that she had been drinking at a restaurant around 7:30 that evening. At that point, one of the children spoke up and "said something to the effect of no, we were at auntie's house."

Based on his interaction with appellant, Lasco asked her to perform field sobriety tests. She agreed to attempt the tests, ultimately failing all three. Lasco first attempted to administer the finger dexterity test, but appellant began the test before Lasco finished giving her instructions and did not complete the test successfully. Appellant then attempted to perform the nine-step walk and turn test, which she failed. During the one-legged stand, appellant fell over. Appellant refused a preliminary breath test, and Lasco arrested her. Because of appellant's refusal to take a

breath test, Lasco obtained a search warrant for a blood draw and transported appellant to Mary Washington Hospital.

Appellant's blood was drawn at 10:42 p.m. The analyzed sample revealed that her BAC was .25. At trial, Dr. Carol O'Neal, a forensic toxicologist supervisor with the Department of Forensic Science at the Northern Laboratory, testified that appellant's BAC concentration would affect an individual's steering accuracy, vision, balance and coordination, and the ability to see objects clearly. She also explained that appellant's BAC would cause "tunnel vision," meaning that the driver is just staring straight ahead and losing all reference to the periphery. Dr. O'Neal further testified that individuals typically reach their highest BAC concentration within thirty minutes of their last drink. For that reason, she expressed her opinion that if someone took a drink an hour before driving, and the blood was drawn three hours later, it could be expected that the "blood alcohol level at the time of driving [would be] higher than when the blood was taken." Finally, Dr. O'Neal opined that "the ability to drive safely is compromised" if a person drives with a BAC concentration of .25.

In convicting appellant of driving while intoxicated, the trial court pointed to appellant's admission to consuming alcohol, her operation of a vehicle with two flat tires, the strong odor of alcohol observed by Lasco, and her admission to hitting a median. The court further noted appellant's failure to complete the field sobriety tests and her belligerence towards Lasco and hospital staff. The court explained that "the BAC test of [.25] is consistent with all the other indicia of your being heavily and highly intoxicated." Then, "from the evidence and testimony provided," the court found the evidence was sufficient for a finding of felony child neglect.

> And, of course, driving extremely intoxicated while you have your children in the vehicle and actually having an accident, actually having hit the median, is not a possibility of danger or harm to your children. It is more - - it's a probability of harm.

And of course, as an adult, when you get behind the wheel
while you've been drinking and intoxicated, you certainly know
that that is a risk of harm, not only to you, but to your loved ones.

The trial court sentenced appellant to three years' incarceration with two years and ten months suspended on each of the felony child neglect convictions for a total period of active incarceration of four months on the felony child neglect convictions.[2]

This appeal followed.

ANALYSIS

Appellant argues the trial court gave undue weight to her BAC result in convicting her of felony child neglect. Fundamentally, appellant's argument is that the evidence was insufficient to establish the elements set forth in Code § 18.2-371.1(B)(1). "Ordinarily, when faced with 'a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved.'" Hannon v. Commonwealth, 68 Va. App. 87, 92, 803 S.E.2d 355, 357 (2017) (quoting Smith v. Commonwealth, 282 Va. 449, 453, 718 S.E.2d 452, 454 (2011)). To the extent that this argument ultimately "presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a statute, we must construe statutory language to answer the question. That function presents a pure question of law which we consider *de novo* on appeal." Smith, 282 Va. at 453-54, 718 S.E.2d at 454; see also Hodges v. Commonwealth, 64 Va. App. 687, 693, 771 S.E.2d 693, 696 (2015).

Code § 18.2-371.1(B)(1) provides that

> [a]ny parent, guardian, or other person responsible for the care of a
> child under the age of 18 whose willful act or omission in the care
> of such child was so gross, wanton, and culpable as to show a
> reckless disregard for human life is guilty of a Class 6 felony.

---

[2] The trial court also sentenced her for the other convictions referenced above, imposing terms of active incarceration and suspended time that are not pertinent to this appeal.

- 4 -

Here, it is uncontested that appellant was the mother of the two children who were her passengers and that the two children were under the age of eighteen. Thus, the question before us is whether the evidence established that appellant committed a "willful act or omission in the care of such child [that] was so gross, wanton, and culpable as to show a reckless disregard for human life."[3]

In interpreting Code § 18.2-371.1(B)(1)'s willfulness requirement, the Supreme Court has held that "[t]he term 'willful act' imports knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004). Thus, to fall within the scope of the statute, a parent's act or omission must be such that "an objectively reasonable person would understand that injury to the child is likely to result" from the act or omission. Hannon, 68 Va. App. at 94, 803 S.E.2d at 359.

Similarly, Code § 18.2-371.1(B)(1)'s requirement that the act or omission be "so gross, wanton, and culpable as to show a reckless disregard for human life" also implicates whether injury "is likely to occur as a result of the act or omission." Hannon, 68 Va. App. at 94, 803 S.E.2d at 359. As the Supreme Court has observed regarding this portion of the statute:

> The term "gross, wanton, and culpable" describes conduct. The word "gross" means "aggravated or increased negligence" while the word "culpable" means deserving of blame or censure. "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, *under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned*, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

---

[3] In asserting that the evidence was insufficient, appellant notes that "the children were not injured nor did they seem distressed" when Lasco encountered them. We note that Code § 18.2-371.1(B)(1) "does not require that a child actually suffer an injury as a result of a parent's act or omission," Hannon, 68 Va. App. at 93, 803 S.E.2d at 358; rather, it encompasses potential injuries and deaths and seeks to limit a child's exposure to such dangers.

Barrett, 268 Va. at 183, 597 S.E.2d at 111 (emphasis added) (internal quotation marks and citations omitted).  Accordingly, to sustain appellant's convictions, the evidence must be sufficient to allow the factfinder to conclude that appellant's actions exposed the children to more than a mere possibility of injury; the factfinder must be able to conclude from the evidence that injuries were likely.

Appellant argues the evidence was insufficient to allow the trial court as factfinder to make such a determination.  Specifically, she argues that, in reaching its conclusion that appellant's actions created "a probability of harm," the trial court "gave undue weight to the blood test results."[4]  We disagree.

Virginia's appellate courts previously have addressed whether driving at various levels of intoxication is sufficient to constitute a "willful act" that is "so gross, wanton, and culpable as to show a reckless disregard for human life."  For example, in Stevens v. Commonwealth, 272 Va. 481, 487-88, 634 S.E.2d 305, 309 (2006), the Supreme Court addressed a situation in which the driver's "blood alcohol content was .24 or .25, approximately three times the legal limit."  Although it reviewed other evidence pertaining to the driver, the Supreme Court expressly stated that the defendant's "high level of intoxication, approximately three times the legal limit . . .

---

[4] Inherent in appellant's argument are the assumptions that little to no other evidence supported the trial court's finding of a probability of harm and that the trial court's conclusion resulted from an almost singular focus on appellant's BAC test results.  Our opinion addresses the argument advanced by appellant; however, that does not mean we agree with the assumptions underlying that argument.  Significant other evidence supported the trial court's conclusion: appellant's inability to control her SUV when she nearly struck Lasco's marked police cruiser; appellant's inability to control her SUV to the point that she struck a median with sufficient force to flatten two tires; her continued operation of the vehicle with two flat tires; and her inability to complete one of the field sobriety tests without falling down.

*alone* justifies a finding that Stevens' conduct was gross, wanton, and culpable[,]" and thus, met the standard found in Code § 18.2-36.1(B).[5] Id. at 488, 634 S.E.2d at 310 (emphasis added).

Relying on Stevens, this Court found a similar blood alcohol content was sufficient to meet the standard in Code § 18.2-371.1(B)(1). In Wood v. Commonwealth, 57 Va. App. 286, 292, 701 S.E.2d 810, 812 (2010), a mother was driving her children in a parking lot while intoxicated. When her blood alcohol content was tested, it was determined to be .19 and other evidence established that her blood alcohol content "at the time of her driving . . . was .22 to .26." Id. at 294, 701 S.E.2d at 813. Although we addressed other evidence, this Court plainly stated that driving at such a high level of intoxication, approximately three times the legal limit, "alone justifies a finding of gross, wanton, and culpable conduct" for purposes of Code § 18.2-371.1(B)(1). Id. at 301, 701 S.E.2d at 817 (citing Stevens, 272 Va. at 488, 634 S.E.2d at 310).[6]

We recently returned to the issue in Coomer v. Commonwealth, 67 Va. App. 537, 797 S.E.2d 787 (2017). In Coomer, a mother was charged with a violation of Code 18.2-371.1(B)(1) for driving her child while legally intoxicated. Her blood alcohol content was found to be .09 at testing and estimated to be as high as .11 at the time of driving. Id. at 543, 797 S.E.2d at 789. Concluding that the other evidence did not support a conviction under the statute, id. at 550-51, 797 S.E.2d at 793, we addressed the fact that Coomer was legally intoxicated while driving her

---

[5] Code § 18.2-36.1(A) provides that a person whose violation of certain laws prohibiting driving under the influence "unintentionally causes the death of another person" is "guilty of involuntary manslaughter." In turn, Code § 18.2-36.1(B) classifies the offense as "aggravated involuntary manslaughter" and imposes a "mandatory minimum term of imprisonment" if "the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life[.]"

[6] In relying on Stevens, we expressly noted that "[a]lthough the Stevens Court pointed out additional aggravating conduct by Stevens, the Court reached the inescapable conclusion that alcohol alone can support such a finding." Wood, 57 Va. App. at 301, 701 S.E.2d at 817.

child. Noting that Coomer's blood alcohol content was "half of that measured in <u>Wood</u>," <u>id.</u> at 550, 797 S.E.2d at 793, we concluded that her level of intoxication, standing alone, was insufficient to support a conviction under Code § 18.2-371.1(B)(1). <u>Id.</u> at 552, 797 S.E.2d at 794.

Given that the level of intoxication at issue in <u>Stevens</u> and <u>Wood</u> was significantly different than the level in <u>Coomer</u>, there is nothing inconsistent about the ultimate conclusions drawn in these cases.[7] As appellant concedes, it is axiomatic that driving while intoxicated increases the risk of injury to a driver and her passengers and that such risk increases as the driver's intoxication level rises. Thus, although a level of intoxication at or near the legal limit, in and of itself, may be insufficient to allow a factfinder to conclude that injury is probable, the same is not true at higher levels of intoxication. Consistent with <u>Stevens</u> and <u>Wood</u>, driving with a BAC far above the legal standard for driving while intoxicated can be sufficient to allow a rational factfinder to conclude that the risk of injury is probable, and we so hold.[8]

Applying this holding to the instant case, we find that appellant's blood alcohol content and the related testimony of Dr. O'Neal regarding the effects of such level of intoxication constituted sufficient evidence to allow a rational factfinder to conclude that appellant exposed her children to a probability of injury when she drove with them in the car. Here, the evidence

---

[7] Noting that both the <u>Stevens</u> and <u>Wood</u> Courts had referenced evidence other than the respective defendants' blood alcohol contents, the <u>Coomer</u> Court characterized those cases' conclusions that high levels of intoxication, standing alone, are sufficient to meet the applicable standard as "dicta." <u>Coomer</u>, 67 Va. App. at 549, 797 S.E.2d at 793. Because <u>Coomer</u> did not involve a blood alcohol content two times the legal limit, let alone a situation where the blood alcohol content was approximately three times the legal limit, the determination of whether these statements qualify as dicta was unnecessary to decide the case. Accordingly, <u>Coomer</u>'s characterization of these conclusions as dicta is itself dictum.

[8] It is important to note that we do not hold that any particular BAC level while driving children is a *per se* violation of Code § 18.2-371.1(B)(1). Rather, we simply hold that a BAC three times the legal limit provides sufficient evidence *to allow* a rational factfinder to conclude that the statutory standard has been met.

allowed the factfinder to conclude that appellant's blood alcohol content was higher than .25 when she was driving her children on the highways of the Commonwealth. Thus, her level of intoxication was more than three times the legal limit, higher than the levels of intoxication present in Wood or Stevens, and approximately two and a half times the level in Coomer. Accordingly, the evidence was sufficient to support appellant's convictions for felony child neglect under Code § 18.2-371.1(B)(1).

## CONCLUSION

For the reasons stated above, the evidence was sufficient to support appellant's convictions for felony child neglect in violation of Code § 18.2-371.1(B)(1). Accordingly, we affirm the judgment of the trial court.

Affirmed.