COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and Athey
Argued by videoconference

**PUBLISHED**

TERRENCE D'JUAN BLACKWELL

v.    Record No. 0328-20-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 23, 2021

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Aaron M. Vandenbrook (Richard G. White, Jr.; Office of the Public
Defender, on brief), for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Terrence D'Juan Blackwell was convicted of two counts of violating Code § 18.2-386.1

for filming a nonconsenting minor on multiple occasions. On appeal, he argues that the trial

court impermissibly concluded that the age of the victim alone established that she was

"nonconsenting" for the purpose of Code § 18.2-386.1 and that, absent such a conclusion, the

evidence was insufficient to establish that the victim was "nonconsenting." He further argues

that the evidence was insufficient to establish that he, as opposed to someone else, engaged in the

illegal filming. For the reasons that follow, we affirm Blackwell's convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)). Accordingly, we discard any of Blackwell's conflicting evidence, regard as true all

credible evidence favorable to the Commonwealth, and grant the Commonwealth all inferences that reasonably may be drawn from that evidence. Id. at 473.

Blackwell and Ketedria Archer were engaged to be married and lived together from September 2018 until April or May 2019. Although they were not living together at the time, Blackwell, in an intoxicated state, arrived at Archer's residence in Petersburg on May 25, 2019 at 5:30 a.m. Because Blackwell was intoxicated, Archer let him inside the residence, where he passed out at the foot of Archer's bed.

While Blackwell was in an impaired state, Archer searched his pockets and then looked through his phone. Using the Netflix password Blackwell previously had given her, Archer was able to unlock the phone. She discovered two videos of her daughter, who was eight years old at the time of trial, on Blackwell's phone. The first video depicted the child nude in her own bedroom. Archer characterized the video depicted as having been shot by having "the phone . . . put under the door" to allow the videographer "watch[] her undress." Archer testified that a "second video[,]" depicted her daughter in a state of undress and that "at the time the phone was put under the door, [her daughter] was pulling her bra down" and was wearing nothing else except for her underwear.

Upon discovering the videos, Archer woke Blackwell and confronted him about them. He denied any involvement in the videos. Archer then attempted to send the videos to her Facebook account to preserve them. Blackwell's phone "died" in the process of sending the second video, and thus, only one video was preserved in Archer's Facebook account.

Blackwell ultimately regained possession of his phone and, during the confrontation, also took possession of Archer's phone. When Archer regained possession of her phone, the "chip" was missing from it. As a result, Archer was unable to make any outgoing calls with her phone.

Archer then went to the home of her friend, Ashley Taylor, who is Blackwell's cousin and the child victim's godmother. Taylor described Archer as "frantic" and said Archer kept repeating "'I need your phone. I need your phone.'" Archer explained to Taylor that her phone had been rendered inoperable and that she needed to log into her own Facebook account to preserve the video before Blackwell could access her account and delete it. Taylor unlocked her boyfriend's phone to access Archer's Facebook account.[1] Taylor then sent the one preserved video to her own phone.

Initially hesitant to report the incident to the police because of her continuing feelings for Blackwell, Archer, accompanied by Taylor, eventually reported it to authorities. Based on the information Archer provided, police obtained a search warrant for Blackwell's phone. Ultimately, Blackwell's phone was examined by Detective Harris of the Colonial Heights Police Department, who was recognized by both the parties and the trial court as an expert in forensic examinations of computers and cell phones.[2] Using forensic software, Harris extracted content from Blackwell's cell phone, including the two videos, and made copies of the videos.

The copies of the videos were introduced into evidence at trial. At trial, Archer confirmed that the videos played were the same as the videos she had seen on Blackwell's phone on the morning in question and that the videos depicted Archer's daughter in various states of undress in the daughter's bedroom. The videos themselves are consistent with Archer's descriptions; both show Archer's daughter, in the daughter's bedroom, in varying states of

_____

[1] Taylor's phone was "dead[,]" necessitating the initial use of Taylor's boyfriend's phone. Once Taylor's phone was fully charged, she returned her boyfriend's phone to him.

[2] Multiple officers were involved in obtaining the warrant for Blackwell's phone, conducting the forensic examination, and introducing the videos at trial. At trial, issues were raised related to hearsay and whether an appropriate foundation was established to admit the videos and tie them to Blackwell's phone. The trial court resolved those evidentiary issues in the Commonwealth's favor, and Blackwell does not challenge those rulings on appeal.

undress with the filming apparently accomplished by surreptitiously positioning the camera under the child's bedroom door.

When the Commonwealth rested, Blackwell moved to strike. He challenged the sufficiency of the evidence, arguing that the evidence did not establish that he, as opposed to someone else, had made the videos of the child and that the Commonwealth's evidence did not establish the child was "nonconsenting" as required by the statute. The trial court rejected both arguments, finding the evidence sufficient and making an express finding that the Commonwealth's witnesses were credible. In rejecting Blackwell's argument regarding the victim's status as a nonconsenting person for the purposes of Code § 18.2-386.1, the trial court concluded that the child did not consent and that, due to her age, could not consent as a matter of law. Specifically, the trial court stated "There's no person under the age of 18 that's deemed consentible [sic] unless you're talking about 16-year-olds and the rape statute. She's eight years old. She's not capable to consent to anything." When Blackwell continued to argue that the evidence did not establish that the child was a nonconsenting person, the trial court responded: "By law, an eight-year-old is a non-consenting person. There does not need to be any evidence from the Commonwealth that an eight-year-old said, 'You can't film me,' because an eight-year-old cannot make that decision." The trial court reasoned, "An eight-year-old cannot give consent to anything. An eight-year-old cannot give consent to a stranger handing her candy. . . . By the nature of this statute, she is a non-consenting person."

Blackwell elected not to put on evidence and renewed his arguments related to the sufficiency of the Commonwealth's evidence. The trial court again rejected those arguments and convicted Blackwell of two counts of violating Code § 18.2-386.1 for filming a nonconsenting person. Because the trial court found that the victim was a minor, the convictions were subject to enhanced penalties pursuant to Code § 18.2-386.1(D).

- 4 -

Blackwell now appeals. He contends that the trial court impermissibly concluded that the age of the victim alone established that she was "nonconsenting" for the purpose of Code § 18.2-386.1 and that, absent such a conclusion, the evidence was insufficient to establish that the victim was "nonconsenting." He further argues that the evidence was insufficient to establish that he, as opposed to someone else, engaged in the illegal filming.

## ANALYSIS

### I. Standard of review

In arguing that the evidence failed to establish that the child in the videos was a "nonconsenting person" for the purpose of Code § 18.2-386.1 or that he was the person who filmed the child, Blackwell asserts that the evidence is insufficient to support his convictions. "Ordinarily, when faced with 'a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved.'" Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017) (quoting Smith v. Commonwealth, 282 Va. 449, 453 (2011)). As a result, "[w]e do not substitute our judgment for that of the trier of fact and will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it[.]" Melick v. Commonwealth, 69 Va. App. 122, 144 (2018) (internal quotation marks and citations omitted). When, however, a sufficiency challenge ultimately "presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a statute, we must construe statutory language to answer the question. That function presents a pure question of law which we consider *de novo* on appeal." Hannon, 68 Va. App. at 92 (quoting Smith, 282 Va. at 453-54); see also Camp v. Commonwealth, 68 Va. App. 694, 701 (2018).

## II. Code § 18.2-386.1

Pursuant to Code § 18.2-386.1(A),

> It shall be unlawful for any person to knowingly and intentionally create any videographic or still image by any means whatsoever of any nonconsenting person if (i) that person is totally nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast in a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom or other location; or (ii) the videographic or still image is created by placing the lens or image-gathering component of the recording device in a position directly beneath or between a person's legs for the purpose of capturing an image of the person's intimate parts or undergarments covering those intimate parts when the intimate parts or undergarments would not otherwise be visible to the general public; and when the circumstances set forth in clause (i) or (ii) are otherwise such that the person being recorded would have a reasonable expectation of privacy.

Violation of Code § 18.2-386.1 is "punishable as a Class 1 misdemeanor[,]" Code § 18.2-386.1(C), unless the image created "involv[es] a nonconsenting person under the age of 18" in which case the offense is "punishable as a Class 6 felony[,]" Code § 18.2-386.1(D).

On appeal, Blackwell does not dispute that the videos introduced at trial constitute images of a "person [who] is totally nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast in a . . . bedroom[,]" Code § 18.2-386.1(A)(i), in circumstances in which the "person being recorded would have a reasonable expectation of privacy[,]" Code § 18.2-386.1(A). Furthermore, Blackwell does not dispute that the images are of a person "under the age of 18[.]" Code § 18.2-386.1(D). Rather, he argues that the evidence did not establish that the victim was a "nonconsenting person" as required by both Code § 18.2-386.1(A) and (D) or that he was the person who created the videos. We address each argument in turn.

III. The child victim as "nonconsenting person"

A. Meaning of "nonconsenting person"[3]

At its core, Blackwell's argument that the evidence failed to establish that the child victim was a "nonconsenting person" presents a question of statutory construction—to wit, who is encompassed by the General Assembly's use of the phrase "nonconsenting person" in Code § 18.2-386.1. In construing a statute, our task is "'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418 (2011)). In doing so, we "give statutory language its plain meaning[,]" Davenport v. Little-Bowser, 269 Va. 546, 555 (2005) (citing Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313 (2005)), recognizing that we are to view the words of the statute in "the context in which they are used[,]" City of Virginia Beach v. Bd. of Supervisors, 246 Va. 233, 236 (1993) (quoting Grant v. Commonwealth, 223 Va. 680, 684 (1982)).

Black's Law Dictionary defines "nonconsent" as the "[l]ack of voluntary agreement." Nonconsent, Black's Law Dictionary (11th ed. 2019). To enter into a voluntary agreement, a person must be aware of the proposed agreement and, free from coercion, make a conscious decision to agree. Applying this definition to Code § 18.2-386.1 leads to the conclusion that the statute is not violated if the subject of the picture or video recording knowingly and voluntarily agrees to be photographed or videotaped. Such agreement may be express or implied. If by

---

[3] The phrase "nonconsenting person" appears twice in Code § 18.2-386.1, first in Code § 18.2-386.1(A) and then in Code § 18.2-386.1(D). "[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning." Prop. Damage Specialists, Inc. v. Rechichar, 292 Va. 410, 415 (2016) (alteration in original) (quoting Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs., 283 Va. 190, 195 (2012)). There is no indication in the statute that the General Assembly intended for the phrase to have a different meaning in subsection A than it does in subsection D. Accordingly, we conclude that "nonconsenting person" in subsection A has the same meaning as "nonconsenting person" in subsection D.

word or action the subject of the image freely consents to the taking of the image, the subject is a consenting person, and thus, falls outside of the statute's prohibition even if the listed body parts ("nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast") are exposed, the geographic elements ("in a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom," etc.) are established, and "the circumstances . . . are otherwise such that the person being recorded would have a reasonable expectation of privacy." Code § 18.2-386.1.

Conversely, when the subject of the photograph or videotape evinces, whether by word or action, a desire not to be so photographed or videotaped or otherwise refuses to agree to such activity, that person is a "nonconsenting person" for the purposes of Code § 18.2-386.1. Such refusal to agree to the creation of the image may be express or implied. Thus, if by word or action, the subject of the image has indicated that he or she does not consent to the image being recorded and the other elements of the statute are established, Code § 18.2-386.1 has been violated.

The scope of Code § 18.2-386.1's prohibition, however, extends beyond cases in which the subject, by word or action, evinces a refusal to agree to be photographed or videotaped. By choosing the phrase "nonconsenting person[,]" the General Assembly required that the subject of the photograph or videotaping actually consent to fall outside the statute's prohibition; thus, the statute encompasses situations in which the subject evinces, whether by word or action, a desire not to be so photographed or videotaped or otherwise refuses to agree to such activity *and* situations in which the subject's words and actions evince neither consent nor a refusal to

- 8 -

consent. In short, only a person who affirmatively consents falls outside of the statute's prohibition.[4]

Such a construction is not only consistent with the plain meaning of "nonconsenting[,]" it is consistent with the context supplied by the remainder of the statute. By including a list of private places, "a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom[,]" Code § 18.2-386.1, and requiring that the surrounding "circumstances . . . are otherwise such that the person being recorded would have a reasonable expectation of privacy[,]" id., the General Assembly clearly intended to address circumstances involving surreptitious photographs and videotapings. Oblivious to the creation of the image, the subject of a secret photograph or videotape has not consented to it, but also has had no opportunity to evince, by word or action, a refusal to be photographed or videotaped. Such a person is a "nonconsenting person[,]" and the statute's prohibition applies to such clandestine photographs and video recordings.

B. Sufficiency of age alone to establish that a victim is a "nonconsenting person"

In comments explaining its conclusion that the child victim was a "nonconsenting" person, the trial court focused exclusively on the child's age. As noted above, the trial court expressed a belief that minors are incapable of consenting for purposes of Code § 18.2-386.1, stating "no person under the age of 18" was capable of such consent. Regarding the specific

_____

[4] In holding that only a person who affirmatively consents to being photographed or videotaped falls outside the scope of the statute if the other elements are met, we do not hold that the subject's affirmative consent may be established only through evidence of express verbal or written consent. As with most other aspects of Virginia law, whether the subject is consenting or nonconsenting for purposes of Code § 18.2-386.1 may be established by circumstantial evidence, which "is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing . . . ." Pijor v. Commonwealth, 294 Va. 502, 512 (2017) (quoting Dowden v. Commonwealth, 260 Va. 459, 468 (2000)). Accordingly, a defendant is free to argue to a factfinder that the circumstances establish that a subject consented even in the absence of evidence of express consent, and the Commonwealth is free to argue that the circumstances establish the subject was "nonconsenting[.]"

eight-year-old victim here, the trial court reiterated its view that, "[b]y law, an eight-year-old is a non-consenting person[,]" and "[a]n eight-year-old cannot give consent to anything."

Blackwell contends that such a view, that a minor is automatically a "nonconsenting person" for the purposes of Code § 18.2-386.1, is inconsistent with the language of Code § 18.2-386.1 and constitutes error. For the following reasons, we agree with Blackwell.

In concluding that neither the eight-year-old victim nor any other person under the age of eighteen was capable of being anything other than a "nonconsenting person" for the purpose of Code § 18.2-386.1, the trial court appears to have concluded that a minor is incapable of consenting to anything. It is true that, for centuries, the law has treated minors differently than adults in many respects. At common law, a male was not bound by a commercial or marital contract until he reached the age of fourteen.[5] 1 W. Blackstone, Commentaries 424 & 453-54 (1769). However, such a contract entered into was not void, but merely voidable by the minor upon reaching the age of fourteen. Id.; see also Zelnick v. Adams, 263 Va. 601, 608 (2002) (recognizing the common law rule that, except for contracts for "necessaries" that are binding regardless of infancy, "a contract with an infant is not void, only voidable by the infant upon attaining the age of majority"); Needam v. Needam, 183 Va. 681, 685-86 (1945) (recognizing the common law rules regarding infancy and marriage).

Although Virginia continues to follow the common law rule that contracts entered into by minors are often voidable but not void, see Zelnick, 263 Va. at 608, Virginia has departed from the common law rule that fourteen is, in general, the age of discretion or otherwise the point when a minor becomes an adult for legal purposes. As the Supreme Court has recognized, "[d]etermining the age of majority is the province of the General Assembly." McDonald v.

---

[5] At common law, a female could enter into a binding marriage at age twelve. 1 W. Blackstone, Commentaries 424 (1769); see also Needam v. Needam, 183 Va. 681, 685-86 (1945).

- 10 -

Commonwealth, 274 Va. 249, 259 (2007) (citing Mack v. Mack, 217 Va. 534, 537 (1976)). The General Assembly has determined the age of majority generally is eighteen, see Code § 1-203 (defining "adult" as "a person 18 years of age or more"); Code § 1-204 (noting that, absent a statutory "exception . . . a person shall be an adult, shall be of full age, and shall reach the age of majority when he becomes 18 years of age"); Code § 1-207 (defining "'[c]hild,' 'juvenile,' 'minor,' [and] 'infant'" as "a person less than 18 years of age"), but that determination is subject to statutory exceptions. Thus, although the age of majority is eighteen, a person under eighteen may make legally cognizable decisions, including the ability to consent to various activities, in certain circumstances. The question presented here is whether the trial court correctly determined that the General Assembly deemed all minors incapable of consent for the purpose of Code § 18.2-386.1.

Taken as a whole, the language of Code § 18.2-386.1 belies such a construction. As noted above, the statute contains the phrase "nonconsenting person" twice, once in the elements of the offense specified in Code § 18.2-386.1(A) and once in the penalty enhancement provision found in Code § 18.2-386.1(D). Specifically, Code § 18.2-386.1(D) provides that "[a] violation of subsection A involving *a nonconsenting person under the age of 18* shall be punishable as a Class 6 felony." (Emphasis added). That the General Assembly deemed it necessary to modify "person under the age of 18" with the phrase "nonconsenting" affords only one reasonable interpretation: a person under the age of eighteen can be either a nonconsenting person or a consenting person.

If a minor were *per se* a "nonconsenting person" for the purpose of Code § 18.2-386.1 there would have been no need to include the modifier "nonconsenting" before "person under the age of 18[.]" A conclusion that a person under eighteen is legally incapable of consenting for the purpose of Code § 18.2-386.1 renders the General Assembly's use of the modifier

- 11 -

"nonconsenting" in subsection D mere surplusage. The Supreme Court has made clear that we may not "read[] a[] legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd[,]" but rather, must read "every act of the legislature . . . so as to give reasonable effect to every word and to promote the ability of the enactment to remedy the mischief at which it is directed." Jones v. Conwell, 227 Va. 176, 181 (1984). To give effect and meaning to the phrase "nonconsenting person" in Code § 18.2-386.1(D), a person under eighteen must be capable of such consent.

This conclusion, that a person under eighteen legally can be capable of "consent," finds support in other criminal statutes with a sexual component. For example, the penalty portion of the carnal knowledge statute, Code § 18.2-63(B), provides that

> [i]f any person carnally knows, without the use of force, a child thirteen years of age or older but under fifteen years of age who *consents* to sexual intercourse and the accused is a minor and such *consenting child* is three years or more the accused's junior, the accused shall be guilty of a Class 6 felony. If such *consenting child* is less than three years the accused's junior, the accused shall be guilty of a Class 4 misdemeanor.

(Emphasis added). Similarly, the contributing to a delinquency of a minor statute, Code § 18.2-371, criminalizes the act of an adult having "*consensual* sexual intercourse" with "a child 15 or older[.]" (Emphasis added); see also Code § 18.2-67.5 (recognizing the possibility of a conviction under Code § 18.2-371 for "*consensual* intercourse . . . with a *child*" (emphasis added)). These statutes make clear that a minor can be a consenting person for the purposes of criminal statutes. Accordingly, for the reasons stated above, we conclude that the trial court erred in concluding that a minor is, as a matter of law, a "nonconsenting person" for the purpose of Code § 18.2-386.1.[6]

---

[6] Although we hold that a minor is not, as a matter of law, a "nonconsenting person for the purpose of Code § 18.2-386.1," it is important to recognize what we do not hold. Nothing in this opinion should be construed as a limitation on the power of the General Assembly to classify

- 12 -

C. Harmless error

Our conclusion that the trial court erred in relying on the age of the victim alone in explaining its rationale for finding that the victim was a "nonconsenting person" does not end our analysis. Rather, consistent with the mandate of Code § 8.01-678,[7] we must determine whether the trial court's emphasis on the age of the victim amounted to harmless error. See Commonwealth v. Swann, 290 Va. 194, 200 (2015) ("Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" (quoting Ferguson v. Commonwealth, 240 Va. ix, ix (1990))).

In conducting harmless error review, we are cognizant that it "is not the same thing as simply asking 'whether the legally admitted evidence was sufficient' to support the conviction." Commonwealth v. White, 293 Va. 411, 422 (2017) (quoting Satterwhite v. Texas, 486 U.S. 249, 258-59 (1988)). While a sufficiency analysis "asks whether a rational [factfinder] *could have* found the defendant guilty[,]" harmless error review "looks at the other side of the reasonable-doubt spectrum" and asks whether the evidence is such "that a rational [factfinder]

_____

minors, or a subset of minors, as incapable of granting such consent. The General Assembly has done so in other statutes. See, e.g., Code § 18.2-61(A)(iii); Code § 18.2-67.1(A)(1); Code § 18.2-67.2(A)(1); and Code § 18.2-67.2(A)(1) (respectively providing that, in effect, the lack of consent/force/threat elements of rape, forcible sodomy, object sexual penetration, and aggravated sexual battery are satisfied if the victim is under the age of thirteen); see also Code § 18.2-63(C) (expressly providing that "[f]or the purposes of this section, [the carnal knowledge statute,] (i) a child under the age of thirteen years shall not be considered a consenting child . . ."). Our holding in this case is that the General Assembly, by not enacting similar language in Code § 18.2-386.1, has not made such a decision here. See Brown v. Commonwealth, 284 Va. 538, 545 (2012) ("[W]hen the General Assembly includes specific language in one . . . statute, but omits that language from another . . . statute, [courts] must presume that the exclusion of the language was intentional because under these circumstances, it is evident that the General Assembly knows how to include such language in a statute to achieve an intended objective; thus the omission of [such] language [in another statute] represents an unambiguous manifestation of a contrary intention." (alterations in original) (internal quotation marks and citations omitted)).

[7] In pertinent part, Code § 8.01-678(2) provides: "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial."

*would have* found the defendant guilty absent the error[.]" Id. (third alteration in original) (quoting Neder v. United States, 527 U.S. 1, 18 (1999)).

Turning to the evidence in this case, we begin with the victim's age. Although age alone is insufficient to establish that she was a "nonconsenting person[,]" it is more than simply reasonable for a factfinder to conclude that an eight year old is unlikely to knowingly and voluntarily agree to pose nude or semi-nude of her own free will. Thus, while not dispositive, the victim's age is a relevant consideration in determining whether she was a "nonconsenting person" as that phrase is used in Code § 18.2-386.1.

More damaging to Blackwell's sufficiency argument, however, is the remaining evidence. The best evidence of the lack of the victim's consent is the nature of the videos themselves. It cannot be disputed that the filming was surreptitious with the camera being slipped under a closed door. Nothing in the video suggests that the victim was aware of the filming; she does not stare at the camera or otherwise act in a manner suggesting that she is posing for the camera. Given the difficulties, ranging from issues with lighting to difficulties with camera angles, inherent in trying to videotape a subject from under a closed door, it flies in the face of human experience that a person would choose that method of filming if the subject knowingly and voluntarily had agreed to pose for the videos of her own free will.

Thus, taken as a whole, the evidence in this case is more than just sufficient to allow a reasonable factfinder to conclude that the eight-year-old victim was a "nonconsenting person." The totality of the evidence leads inexorably to the conclusion that the victim was unaware she was being filmed, rendering her a "nonconsenting person" for purposes of Code § 18.2-386.1. Accordingly, the trial court's statements, that age alone was sufficient to establish that the victim

was a "nonconsenting person" for the purpose of Code § 18.2-386.1, while erroneous amount to harmless error given the specific facts of this case.[8]

### IV. Evidence of Blackwell as the perpetrator

In his final assignment of error Blackwell contends that the evidence was insufficient to establish that he, as opposed to someone else, engaged in the illegal filming. Thus, unlike his first assignment of error, which involved questions of statutory interpretation and, ultimately, harmless error review, this argument presents a straightforward challenge to the sufficiency of the evidence. As such, our review begins with the premise that "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." Smith v. Commonwealth, 296 Va. 450, 460 (2018) (alteration in original) (quoting Commonwealth v. Perkins, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Secret v. Commonwealth, 296 Va. 204, 228 (2018) (alteration in original) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Pijor, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the

---

[8] The fact that the trial judge's stated rationale included its erroneous view does not preclude a finding of harmless error. For example, in White, the issue was whether the trial court had erred in refusing to suppress evidence of drug distribution found in a bag that police had seized. When the matter was before this Court, we concluded that the bag and its contents should have been suppressed, White v. Commonwealth, 66 Va. App. 333, 366 (2017), and that we could not find the error harmless because, in explaining the basis of its guilty verdict, the trial court's statement "clearly . . . encompass[ed] the digital scale, box of empty plastic bags, and 200 empty capsules found in the bag in the motel room." Id. In reversing this Court, the Supreme Court assumed that the bag and its contents should have been suppressed, but found any such error harmless despite the trial court's statement. White, 293 Va. at 424.

conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

Here, the evidence is more than sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that Blackwell created the videos. Importantly, the evidence established that the videos were found on Blackwell's phone. The evidence also established that Blackwell had lived at and continued to have access to the house where the filming occurred around the time of the filming, placing him in the limited universe of people who had the opportunity to make the videos. Finally, when Archer confronted him about the videos on his phone, Blackwell engaged in conduct giving rise to an inference of guilt. Specifically, from the evidence presented and the reasonable inferences that flow from it, a rational factfinder could conclude that, having been confronted, Blackwell tried to evade detection or prosecution for the crimes by seizing Archer's phone and disabling it to prevent her from contacting authorities. See Turman v. Commonwealth, 276 Va. 558, 564 (2008) ("[A] suspect's acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial . . . [and] 'may become one of a series of circumstances from which guilt may be inferred.'" (quoting Anderson v. Commonwealth, 100 Va. 860, 863 (1902))). These facts, coupled with the trial court's express finding that the testimony of both Archer and Taylor was credible, provided a sufficient evidentiary basis for the factfinder to conclude beyond a reasonable doubt that Blackwell created the videos.[9]

_____

[9] Other than it being possible in the abstract, no evidence was offered to support Blackwell's proffered hypothesis of innocence, that some unknown or at least unnamed person had access to the house, made the videos, and caused them to be on Blackwell's phone. The absence of such evidence permitted the factfinder to reject Blackwell's proffered hypothesis. Gerald, 295 Va. at 482 n.8 ("Hypotheses of innocence that must be excluded 'are those which flow from the evidence itself, and not from the imaginations of defense counsel.'" (quoting Cook v. Commonwealth, 226 Va. 427, 433 (1983))).

## CONCLUSION

For the reasons stated above, the ultimate judgment of the trial court is affirmed.

<u>Affirmed.</u>