COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Huff and Malveaux
Argued at Alexandria, Virginia


MARCOS OSWALDO CHAVARRIA BERMUDEZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0769-21-4                      JUDGE GLEN A. HUFF
                                                    JUNE 28, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Dawn M. Butorac, Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Marcos Oswaldo Chavarria Bermudez ("appellant") was convicted by a jury in the

Fairfax Circuit Court (the "trial court") of two counts of aggravated sexual battery.  He raises

two arguments on appeal:  (1) an admission used against him was obtained in violation of his

*Miranda* rights and (2) the evidence was insufficient to support his convictions.  This Court

agrees with appellant on the first issue but not the second.  Accordingly, it reverses his

convictions and remands for a new trial, should the Commonwealth be so inclined.

---

* Pursuant to Code § 17.1-413(A), this opinion is not designated for publication.

## I. BACKGROUND[1]

*The Facts Relevant to the Miranda Issue*

On April 26, 2019, appellant was arrested on suspicion that he committed sexual battery against A.S., the victim in this case. He was then brought to Fairfax County's police headquarters for questioning. That questioning was conducted by Detective Kyle Bryant and Officer Sergio Andrade, the latter of whom served as a Spanish translator for appellant.

Bryant informed appellant he was in custody because there was "a warrant out for aggravated sexual battery" against him. Before proceeding to questioning, Bryant told appellant he needed to "first go over this [*Miranda*[2]] form with [appellant]." The *Miranda* form was written in Spanish, and in relevant part, contained these five lines (translated in English):

| | |
|---|---|
| Line 1: | I have the right to remain silent. I am not required to say anything to anyone at any time or to answer any questions. |
| Line 2: | Anything I do or say can and will be used against me in a court of law. |
| Line 3: | I have the right to talk to a lawyer before being questioned, and I also have the right to have the lawyer with me while being questioned. |
| Line 4: | If I cannot afford a lawyer and want one, one will be provided for me. |
| Line 5: | If I want to answer questions now without a lawyer present, I will still have the right to stop answering questions at any time. I also have the right to stop answering questions at any time if I want to talk to a lawyer. |

---

[1] This Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party [below]." *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004)).

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

- 2 -

Andrade read these lines to appellant in turn, and each time Andrade did so, he asked appellant if he understood what was read to him. In response, appellant either nodded his head, mumbled "mhm," said "yes," or did some combination of those actions. After each time appellant did so, Andrade asked appellant to sign his initials in a blank space next to each line, and appellant complied each time.

Andrade next read appellant the "Consent to Speak" portion of the *Miranda* form, which said, "I know what my rights are. I am willing to make a statement without a lawyer present. I understand and know what I am doing. No promises or threats have been made to me by anyone." Then, this (translated) exchange took place:

| [Appellant]: | What if I don't want to talk, do I have to sign? |
| --- | --- |
| Bryant: | Obviously there are a lot of questions I have for him. And I'd like to hear his side of the story. And this is the only chance that you and I are going to get to talk. Comprende, does that make sense? |
| [Appellant]: | Yes, but, no, I have to explain to a lawyer because I can't be answering things. |
| Bryant: | Yeah, like I said this is the only chance you and I get to talk. After this, we don't have that opportunity anymore. And you really don't have to sign it. I just need to make sure you understand what your rights are. Okay? So signing it just tells me that you understand that you have this right, this right, this right, and this right. Does that make sense? |
| [Appellant]: | Yes. |

Appellant did not sign the consent to speak portion of the form. Bryant then questioned appellant for roughly fifteen minutes, until appellant said, "I need to talk to a lawyer so he can tell me what to do."

Before that end point, appellant was asked, "[A] few years ago you touch [A.S.] and you apologize and . . . it didn't happen anymore and you moved on and you guys continue with your lives[?]" In response, appellant looked down, exhaled, and said, "Yes." But after that, appellant repeatedly exclaimed that he "didn't do anything bad."

Prior to trial, appellant moved to suppress any evidence of the interrogation, arguing he did not knowingly and intelligently waive his *Miranda* rights and that the police unlawfully questioned him after he asserted his right to a lawyer and his right to remain silent. After a hearing on the matter, the trial court on January 4, 2020, entered a written order denying appellant's motion, finding, among other things, that appellant did not unambiguously invoke any of his *Miranda* rights prior to police questioning.[3]

The Commonwealth ultimately elected not to introduce the recording of the interrogation at trial. Instead, it called Andrade to the stand, who testified as to appellant's admission that he "touched" A.S. "a few years" before his arrest and interrogation.

*Appellant's Conduct Preceding the Crimes for Which He Was Indicted*

A.S. knew appellant since she was two years old. Her mother, Matilde Sanchez, dated appellant during the time frame relevant to this case. Appellant, A.S., and Sanchez lived together on-and-off in different locations, including Fairfax, Arlington, and Marlboro, Maryland.

---

[3] This Court does not detail the trial court's reasoning for concluding appellant's words were insufficient to invoke his *Miranda* rights, since it owes no deference to that reasoning on appeal. *Infra* p. 8. However, one aspect of the trial court's ruling is worthy of comment. In its order, the trial court explained that appellant's statement, "Yes, but I have to explain to a lawyer because I can't be answering things" was insufficient to invoke the right to counsel. The problem with that is that both parties agree appellant said the word "no" immediately after saying, "yes, but"—a stipulation confirmed by the motion to suppress transcript and the video recording of appellant's interrogation, the latter of which shows appellant said, "Sí, pero, no." The trial court never explicitly claimed to find otherwise (nor could it credibly do so). To the contrary, the trial court credited the testimony of an expert witness who explained that appellant said the word "no" after saying, "yes, but." And as will be explained, appellant's use of this word in the context of his entire statement factors into the conclusion that he unequivocally invoked his right to counsel. *Infra* pp. 10-11.

- 4 -

The sexual misconduct for which appellant was charged and convicted took place while the three lived in the Barcroft View apartment complex in Fairfax.

But other misconduct not included in the indictment took place long before then.[4] When A.S. was ten years old and living in Arlington, appellant would routinely "caress" A.S.'s thighs and "put[] his hands on her boobs, [her] vagina, and [her] butt." That conduct continued when appellant, Sanchez, and A.S. moved to Marlboro and did not cease throughout their time there.[5] Every time appellant touched A.S., she felt "[c]onfused and scared."

At one point while the three were still living in Marlboro, Sanchez became aware that appellant had touched A.S.—although she was under the impression he had done so only once. Sanchez confronted appellant, reminding him that A.S. "was like his daughter" and that "parents don't do those things with their children." After that confrontation, appellant apologized to A.S. and said he "wouldn't do it again."

In early 2017, appellant, Sanchez, and A.S. were living in the Barcroft View apartment complex in Fairfax. On two occasions when changing in one of the apartment's bathrooms, A.S. discovered appellant's cell phone recording her. After the first time, A.S. simply deleted the recorded footage. After the second, she took appellant's cell phone, threw it down the stairs, and confronted appellant, asking him "how he could do this to [her] if [she] was technically his daughter from two years old and up." In response, appellant apologized and claimed he left his phone in the bathroom on accident and did not intend to record her.

_____

[4] The evidence of appellant's misconduct other than that for which he was indicted is based on A.S.'s trial testimony. Appellant objected to this testimony as irrelevant and as impermissible bad acts evidence, but the trial court disagreed. Appellant does not challenge the trial court's evidentiary ruling in this appeal.

[5] A.S. also allegedly witnessed appellant physically abuse Sanchez several times while living in Marlboro. But when A.S. was asked whether these abuses "affect[ed] how [she] felt when [she was] being touched by [appellant]," A.S. responded, "No." For that reason, those allegations are not factored into this Court's analysis.

*The Conduct for Which Appellant Was Indicted*

In the early months of 2017, and while the three still lived in Fairfax, A.S. would often be alone with appellant at the apartment while Sanchez was at work. On some of these occasions, appellant would "caress" A.S.'s "boobs or butt" while she walked through the apartment's hallways. On others, appellant told A.S. she "would have to go to his [bed]room," took her there, and "grab[bed]" her private areas, going underneath her clothes to do so. These encounters left A.S. feeling "confused."

On one afternoon in May 2017, appellant agreed to give A.S. a ride on his motorcycle to her cousin's "practice." When they prepared to leave, and while A.S. was on the motorcycle's passenger seat, appellant grabbed A.S.'s thighs and pulled her closer to him. After that, appellant rubbed A.S.'s vaginal area for several minutes until appellant decided to turn the motorcycle on and take A.S. where she needed to go. This event made A.S. feel "sad"; and the reason A.S. did not "try to get away from [appellant]" when he touched her was because "[she] had somewhere to be and . . . no one else to give [her] a ride."

A.S. was thirteen years old and 5'1" tall when these events took place. By comparison, appellant was thirty years old, and although the record does not reveal appellant's exact height, A.S. relayed that appellant was "bigger" and "way taller" than her. After appellant touched A.S. on these occasions, he told her "not to tell anyone about [it]" and threatened to harm A.S.'s mother if she did so.[6]

---

[6] At trial, A.S. was confronted with a variety of inconsistencies between her trial testimony and statements she made relating to appellant's touching of her during (1) a discussion with a doctor, (2) a forensic interview at a child advocacy center, and (3) pre-trial conversations with the Commonwealth. Those inconsistencies are not pertinent in the portions of this opinion where this Court is required to view the evidence in the light most favorable to the Commonwealth—i.e., everywhere except the harmless error analysis. *See Abdullah v. Commonwealth*, 53 Va. App. 750, 755 (2009); *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998). But because the general fact of those inconsistencies is relevant to the harmless error analysis, this Court discusses the issue in that portion of its opinion. *Infra* pp. 11-13.

*The Remaining Relevant Testimony and Procedural History*

In 2019, and before appellant's arrest, Sanchez called appellant while in the presence of police officers at the Fairfax County police station. During the call, appellant acknowledged he had "touched" A.S. in the past, but that it was "only that one time" when he did so. Sanchez testified at trial that when appellant referred to "that one time," he was talking about the touching in Marlboro, Maryland that led to Sanchez confronting him. After appellant's admission to this touching, he apologized, said the touching occurred because of "drugs," and stated he regretted "all the harm" he caused to Sanchez and A.S.

Appellant testified in his defense at trial. He admitted he had struggled with alcohol and cocaine abuse and acknowledged those substances "made him change his behavior" for the worse. He also conceded he had admitted during the phone call with Sanchez that he "touched" A.S. in Marlboro, Maryland. But in explaining that occurrence, appellant denied he intended to touch A.S. Instead, appellant claimed he simply "bumped [A.S.'s] butt with [his] hip" on accident. In the end, appellant denied sexually battering A.S. or otherwise engaging in any conduct that served as the basis for the indictments against him.

The jury found appellant guilty of two counts of aggravated sexual battery. Before sentencing, appellant filed a motion to set aside the jury's verdict. In that motion, appellant argued that even if his "alleged" touchings of A.S. were taken as true, the evidence was insufficient to show he touched A.S. through use of force or intimidation. The trial court disagreed and denied appellant's motion. By order entered on July 12, 2021, appellant was sentenced to three years' active incarceration.

This appeal followed.

## II. STANDARD OF REVIEW

Determining whether a suspect invoked one or several of his *Miranda* rights generally involves a mixed question of law and fact. *Medley v. Commonwealth*, 44 Va. App. 19, 30 (2004). The determination of what the accused "actually said" is a factual question reviewed for clear error. *Ferguson v. Commonwealth*, 52 Va. App. 324, 337 (2008) (citation and internal quotation marks omitted). The determination of whether the words said were "sufficient to invoke the right to counsel" is a legal question reviewed *de novo*. *Id.* (citation and internal quotation marks omitted). Here, the factual question of what appellant said is not in dispute. The only question is whether the words appellant used invoked his right to counsel, his right to remain silent, or both. So, this appeal presents a pure question of law that this Court considers *de novo*. *See, e.g.*, *Stevens v. Commonwealth*, 283 Va. 296, 302 (2012).

## III. ANALYSIS

In his first assignment of error, appellant argues he invoked his right to counsel and his right to remain silent prior to questioning by the police when he said, "Yes, but, no, I have to explain to a lawyer because I can't be answering things." Because the police interrogated him after this statement, appellant continues, his admission in the interrogation that he "touched" A.S. "a few years ago" was obtained in violation of *Miranda*. In his second assignment of error, appellant contends the evidence was insufficient to support his convictions.

This Court agrees that appellant sufficiently invoked his right to counsel and that any police questioning after that invocation was unlawful. And because the admission police obtained from appellant through that unlawful questioning was not harmless, appellant is entitled to have his convictions reversed. But because the evidence was sufficient to support appellant's convictions, this Court determines the Commonwealth may retry him if it so chooses.

A.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect the privilege against self-incrimination, the United States Supreme Court has established a "series of . . . 'safeguards.'" *Davis v. United States*, 512 U.S. 452, 457 (1994) (quoting *Michigan v. Tucker*, 417 U.S. 433, 443-44 (1974)). These safeguards include, among other things, a suspect's "right to consult with an attorney and to have counsel present during questioning"—a right that the police "must explain" to the suspect "before questioning begins." *Id.* (citing *Miranda v Arizona*, 384 U.S. 436, 469-73 (1966)).

"After the police have advised an accused of the *Miranda* rights, the [suspect] may make a knowing and intelligent waiver of those rights and respond to the police interrogation." *McDaniel v. Commonwealth*, 30 Va. App. 602, 605 (1999) (*en banc*) (citing *Edwards v. Arizona*, 451 U.S. 477, 483-84 (1981)). But if the suspect "expresses a desire to have counsel present during a custodial interrogation, law enforcement officers must cease their interrogation until counsel is present or the [suspect] initiates further communication with the authorities." *Stevens*, 283 Va. at 302 (citations omitted).[7]

"However, the invocation of the right to counsel must be clear, unambiguous, and unequivocal." *Zektaw v. Commonwealth*, 278 Va. 127, 136 (2009). Whether a suspect's statements meet that standard is "an objective inquiry," where this Court asks whether the

---

[7] Both parties precede their arguments on the invocation issue by first debating whether appellant knowingly and voluntarily waived his rights before saying, "Yes, but, no, I have to explain to a lawyer because I can't be answering things." But if this Court determines appellant invoked his right to counsel at *any* point prior to questioning, that would obviate the need to separately discern whether appellant waived his rights before the invocation. *Edwards*, 451 U.S. at 484-85; *see also* Bryan Taylor, *You Have the Right to Be Confused! Understanding Miranda After 50 Years*, 36 Pace L. Rev. 158, 174 (2015) (explaining that invocation question precedes knowing and voluntary waiver question under *Miranda* analysis).

suspect "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.

Here, after appellant's *Miranda* rights were explained, police tried to have appellant sign the consent to speak portion of the *Miranda* form. Appellant did not do so but instead asked, "What if I don't want to talk, do I have to sign?" In answering appellant's question, Bryant said he wanted to hear appellant's side of the story, claimed they were presented with the only opportunity for appellant to do so, and asked appellant if all that "ma[d]e sense." Appellant responded, "Yes, but, no, I have to explain to a lawyer because I can't be answering things."

Viewed objectively, this was a clear, unambiguous, and unequivocal invocation of the right to counsel. The first part of appellant's statement was "Yes," which confirmed he understood what Bryant had said to him previously. After that confirmation, appellant's next words "but, *no, I have to explain to a lawyer because I can't be answering things*" clarified that notwithstanding what Bryant said to him, he wanted—in fact, needed—to speak to a lawyer in light of the rights just explained to him.

Appellant's statement was an affirmative statement of the type that Virginia courts have determined to be sufficient invocations of the right to counsel. *See, e.g.*, *Zektaw*, 278 Va. at 136-38 ("Right, and I'd really like to talk to a lawyer because this—oh my God, oh my Jesus, why?"); *McDaniel*, 30 Va. App. at 606 ("I think I would rather have an attorney here to speak for me."). And it stands in contrast to other statements deemed insufficient to invoke the right to counsel, where a defendant either phrases a response in the form of a question or merely expresses reservations about answering questions without counsel. *See, e.g.*, *Commonwealth v. Hilliard*, 270 Va. 42, 51 (2005) ("Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?"); *Commonwealth v. Redmond*, 264 Va. 321, 330 (2002) ("Can

- 10 -

I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?"); *Poyner v. Commonwealth*, 229 Va. 401, 410 (1985) ("Didn't you say I have the right to an attorney?"); *Davis*, 512 U.S. at 462 ("Maybe I should talk to a lawyer."); *Midkiff v. Commonwealth*, 250 Va. 262, 267 (1995) ("I'm scared to say anything without talking to a lawyer.").

In sum, appellant unequivocally invoked his right to counsel when he said, "Yes, but, no, I have to explain to a lawyer because I can't be answering things."[8] At that point, the interrogation should have stopped, regardless of the fact that appellant conversed with police after invoking the right to counsel. *Edwards*, 451 U.S. at 484-85; *see also Smith v. Illinois*, 469 U.S. 91, 100 (1984) ("[A]n accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."). The trial court erred in concluding otherwise and should have granted appellant's motion to suppress his admission to "touching" A.S.

B.

The Commonwealth argues in the alternative that even if the trial court erred in denying appellant's motion to suppress, any error was harmless. To support its view, the Commonwealth contends appellant's admission during the police interrogation was merely cumulative of the previous admission he made during the phone call with Sanchez and ultimately unnecessary to an already strong case against him. This Court disagrees.

Once this Court determines a trial court erred on any front, it is the Commonwealth's burden to show the error was harmless. *Montgomery v. Commonwealth*, 56 Va. App. 695, 702 (2010). When dealing with constitutional error, the Commonwealth must prove "beyond a

---

[8] Because this Court concludes appellant's statement invoked his right to counsel, it need not separately determine whether the statement invoked his right to silence.

reasonable doubt that the error complained of did not contribute to the verdict obtained." *Quinn v. Commonwealth*, 25 Va. App. 702, 719 (1997) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). A reasonable doubt by definition exists if there is any "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963). The Commonwealth faces a more difficult task in proving a confession was harmless since a confession is "like no other evidence" and is "probably the most probative and damaging evidence that can be admitted against" a defendant.[9] *Quinn*, 25 Va. App. at 719 (citation and internal quotation marks omitted).

Finally, asking whether an error was harmless is not the same question as asking whether the evidence was sufficient to support an appellant's conviction. Unlike a sufficiency analysis, which "asks whether a rational [factfinder] *could have* found the defendant guilty," harmless error review "looks at the *other side* of the reasonable-doubt spectrum" and asks whether "a rational [factfinder] *would have* found the defendant guilty absent the error." *Commonwealth v. White*, 293 Va. 411, 422 (2015) (second alteration in original) (second emphasis added) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

Two considerations demonstrate why the Commonwealth cannot meet its burden to prove harmless error here. *First*, the evidence does not show appellant's respective admissions in the police interrogation and the phone call with Sanchez were one in the same. Both Sanchez and appellant explained that the "touching" appellant spoke of in the phone call referred to an incident that took place in Marlboro, Maryland—which was outside the indictment in this case. By contrast, when appellant admitted to "touching" A.S. in the police interrogation, there is

---

[9] While appellant's admission to "touching" A.S. was not strictly a "confession" that he committed a crime, the jury could have inferred that when appellant admitted to touching A.S., he admitted to engaging in conduct that constituted an element of aggravated sexual battery. *Infra* p. 13. Therefore, this Court's precedent in *Quinn* is instructive here.

absolutely no indication of what touching he was referencing. Rather, the only qualifier accompanying this admission was that it happened "a few years ago."

Appellant's interrogation took place in 2019, whereas the conduct for which appellant was indicted took place in 2017 when appellant, A.S., and Sanchez lived in Fairfax. So, when appellant admitted to touching A.S. "a few years ago," the jury easily could have interpreted him as having confessed to an element of the indicted crimes. *See* Code § 18.2-67.4 (providing that a defendant "sexually batters" a victim if he, among other things, "sexually abuses" the victim "as defined in [Code] § 18.2-67.10"); Code § 18.2-67.10(6)(a) (defining "[s]exual abuse" as the intentional touching of "the complaining witness's intimate parts or material directly covering such intimate parts"). Indeed, the fact that appellant was arrested and interrogated by Fairfax police and stood trial in a Fairfax court supports this inference all the more.

*Second*, and relatedly, the jury could have relied on appellant's admission to fill in the gaps created by the inconsistencies in A.S.'s testimony. *See supra* p. 6 n.6. In other words, if A.S.'s testimonial inconsistencies left the jury uncertain of what it thought of her credibility, it reasonably could have resolved that uncertainty in the Commonwealth's favor by concluding, "appellant admitted to the police that he touched A.S. in Fairfax, so that lends support to A.S.'s credibility and minimizes reasonable doubts created by her inconsistent testimony."

In light of both these considerations, this Court cannot say it is "clear beyond a reasonable doubt that a rational [factfinder] *would have* found" appellant guilty in the absence of his admission to touching A.S. in the past. *See White*, 293 Va. at 422 (quoting *Neder*, 527 U.S. at 18). Accordingly, this Court holds that the trial court's error in denying appellant's motion to suppress was not harmless.

C.

Given the foregoing discussion, this Court reverses appellant's convictions. But that does not necessarily mean the indictments against him should be dismissed. Instead, this Court must determine whether the evidence is sufficient to support appellant's convictions, because if not, then the Commonwealth "would be barred on double jeopardy grounds from retrying appellant." *Timbers v. Commonwealth*, 28 Va. App. 187, 202 (1998).

When reviewing the sufficiency of the evidence, "[this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). On appeal, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Wilson v. Commonwealth*, 53 Va. App. 599, 605 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319).

In conducting this review, this Court views "the evidence in the light most favorable to the [Commonwealth], including any inferences the factfinder may reasonably have drawn from the facts proved." *Camp v. Commonwealth*, 68 Va. App. 694, 701 (2018) (quoting *Hannon v. Commonwealth*, 68 Va. App. 87, 92 (2017)). And when deciding whether double jeopardy would bar a defendant's retrial, this Court considers "all the evidence admitted at trial, including evidence admitted erroneously." *Wells v. Commonwealth*, 65 Va. App. 722, 726 (2016).

Code § 18.2-67.3(A)(4)(a), the statute appellant was convicted under, prohibits persons from using "force, threat, or intimidation" to sexually abuse a child "at least 13 but less than 15 years of age" against the child's will. There is no dispute that the evidence was sufficient to show appellant sexually battered A.S. against her will. Nor is there any dispute that A.S. was

within the age range specified by the aggravated sexual battery statute. *See* Code § 18.2-67.3(A)(4)(a). The only dispute is whether the evidence was sufficient to show appellant sexually abused A.S. through use of force, threat, or intimidation.

The Commonwealth argues it proved its case under a theory of either force or intimidation. Appellant says neither theory was proved. This Court determines the evidence was sufficient to show appellant sexually abused A.S. through use of intimidation and therefore need not reach whether the evidence was sufficient to show appellant did so through other means.

"Intimidation is defined as '[u]nlawful coercion; extortion; duress; putting in fear.'" *Bivins v. Commonwealth*, 19 Va. App. 750, 752 (1995) (quoting *Black's Law Dictionary* 831 (6th ed. 1990)). A defendant intimidates a victim if he "put[s] [the] victim in fear of bodily harm by exercising such domination and control . . . as to . . . overbear her will." *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985).

Intimidation can occur even in the absence of an overt "expression of an intention to do bodily harm." *Id.* Instead, a victim suffers fear of bodily harm if the defendant imposes "psychological pressure on [the victim] who, under the circumstances, is vulnerable and susceptible to such pressure." *Id.* In deciding whether a victim was intimidated, "[m]atters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim are . . . relevant." *Commonwealth v. Bower*, 264 Va. 41, 46 (2002).

When appellant touched A.S., he had spent over a decade as A.S.'s *de facto* father figure. Although not dispositive, that "paternal relationship" was a "highly relevant circumstance" in assessing A.S.'s vulnerability to psychological pressure. *See Clark v. Commonwealth*, 30 Va. App. 406, 410-11 (1999). Moreover, after appellant touched A.S., he warned her "not to tell anyone about [it]" and threatened to harm Sanchez if A.S. did not follow his instruction. While

- 15 -

it is true that appellant's prior abuse of Sanchez did not factor into A.S.'s thinking while appellant touched her, s*upra* p. 5 n.5, it does not logically follow that appellant's *present* threats to harm Sanchez in the *future* did not factor into A.S.'s psychological state when appellant touched her. Quite the contrary. Appellant was convicted for sexually battering A.S. on two separate occasions here. A rational finder of fact could infer that appellant's threat to harm Sanchez after the first of these touchings affected A.S.'s ability to resist when he touched her the second time.

Appellant also had an extensive history of sexually abusing A.S. in ways similar to the conduct at issue here. Sanchez's and A.S.'s efforts to confront appellant about that history did no good, and appellant's apologies proved to be empty words—the abuse continued to happen over, and over, and over again. A rational factfinder could conclude that a regrettable and longstanding familial dynamic between appellant and A.S. affected A.S.'s psychological vulnerability. Indeed, that inference is supported by the fact that A.S. said the touchings left her feeling "sad" and "confused." As the factfinder with the "sole responsibility" to determine witness credibility, the jury was entitled to accept A.S.'s testimony on this front as true. *See Commonwealth v. Taylor*, 256 Va. 514, 518 (1998).

A.S.'s vulnerability was not only psychological but also physical. When A.S. and appellant lived in Fairfax, A.S. was thirteen years old and 5'1" tall, whereas appellant was thirty years old and "bigger" and "way taller" than A.S. A factfinder could rationally conclude that size difference contributed to the overbearing of A.S.'s will. *See Bower*, 264 Va. at 46.

In sum, all this evidence supported the jury's conclusion that appellant sexually battered A.S. through use of intimidation. As such, the evidence was sufficient to support appellant's aggravated sexual battery convictions, which means double jeopardy does not bar a retrial.

## IV. CONCLUSION

The trial court erred in denying appellant's motion to suppress. Because that error was not harmless, appellant's convictions for aggravated sexual battery are reversed. But because the evidence was sufficient to support appellant's convictions, a retrial is permissible on remand, should the Commonwealth elect to pursue one.

*Reversed and remanded.*